DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal of a judgment entry issued by the Ottawa County Court of Common Pleas concerning the rights and obligations of property owners in the Cold Harbor Subdivision. The judgment granted in part and denied in part motions for summary judgment filed by appellant, Johnson's Island Property Owners Association ("JIPOA"), and appellees, Susan Manifold and Tim Pheister, respectively. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.
 {¶ 2} In this appeal, appellant raises the following assignments of error:
 {¶ 3} I. "THE TRIAL COURT ERRED IN HOLDING THAT THE 1982 DEED MODIFICATION TERMINATED THE RIGHT OF DOROTHY GAYDOS AND HER HEIRS AND ASSIGNS, AS OWNERS OF THE PROPERTY IN FEE SIMPLE ABSOLUTE, TO PAY FOR AND MAKE ANY IMPROVEMENTS TO GAYDOS DRIVE, THE PARK, AND THE BOAT AREA."
 {¶ 4} II. "THE TRIAL COURT ERRED IN HOLDING THAT APPELLEES, WHO HOLD EASEMENT RIGHTS, HAVE THE RIGHT TO APPLY AS THE UPLAND OWNERS TO ALL GOVERNMENT AGENCIES FOR PERMITS AND/OR LEASES NECESSARY FOR CONSTRUCTION OF A BOAT DOCKING FACILITY AND THAT APPELLANTS HAVE THE OBLIGATION TO ASSIST APPELLEES IN THAT PROCESS."
 {¶ 5} III. "THE TRIAL COURT ERRED IN HOLDING THAT APPELLEES ARE ENTITLED TO THE EXCLUSIVE USE OF THE COMMON AREAS."
 {¶ 6} IV. "THE TRIAL COURT ERRED BY NOT CONDUCTING A TRIAL ON THE ISSUE OF WHETHER THE 1962 DEED RESTRICTIONS AND 1982 MODIFICATION WERE EXTINGUISHED BY TWO DECADES OF INACTIVITY AND INTERVENING LEGAL IMPOSSIBILITY." 2.
 {¶ 7} This court has fully and carefully reviewed the record and the applicable law. In our opinion, the trial court in its May 31, 2006 decision and judgment entry satisfactorily addressed and, with two minor exceptions, properly disposed of the relevant factual and legal issues pertaining to this appeal. Accordingly, apart from the two minor exceptions, which will be discussed infra in connection with the second and third assignments of error, we adopt the trial court's decision and judgment entry as our own. (See Appendix A.)
 {¶ 8} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 9} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 10} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party.Ryberg v. Allstate Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, 629.
 {¶ 11} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 12} Appellant argues in its first assignment of error that the trial court's decision was "simply wrong" in that it "essentially extinguished all of JIPOA's rights as fee simple owners" when it found that the 1982 modification terminated the right of Ms. Gaydos and her heirs and assigns to pay for and make improvements to the roadway and boat area. Ohio law is well settled that an owner of land may impose deed restrictions in order to develop a tract of land in a common design that makes the land more attractive for residential purposes. SeeWood Moor Homeowners' Assn. v. Bolden, 5th Dist. No. 2003CA00244,2004-Ohio-843, ¶ 27-28. When deed restrictions exist, and their meaning is clear, courts are bound to enforce them. MJW Enterprises, Inc. v.Laing, 2d Dist. No. 21253, 2006-Ohio-4011, ¶ 18.
 {¶ 13} Deed restrictions that run with the land attach to and pass as an incident of the ownership of the estate of the land. Vo-Ash LakeProperty Owners Assn., Inc. v. Robert T. Parker B B Realty Co. (Sep. 13, 1985), 7th Dist. No. 500. By their very nature, such restrictions restrain the owner of the servient tenement in the exercise of rights regarding that estate in favor of the owners of the dominant tenements.Maasen v. Zopff (July 26, 1999), 12th Dist. Nos. 98-10-135, 98-10-138, 98-12-153.
 {¶ 14} Here, the deed restrictions clearly run with the land and provide that the park is for the use of the lot owners for a boat docking facility. Appellant claims an interest in the park area through a deed that expressly states that the conveyed interest is subject to all restrictions. Thus, appellant's claim is subservient to the lot owners' interest under the restrictions, and appellant cannot undertake any activity that limits or destroys the interests of the lot owners.
 {¶ 15} The park and road are specifically referenced in the original plat that identifies those parcels and dedicates them to the use of the grantor and lot owners within the subdivision. The instruments used in the transfer that created the restrictions specifically identify the platted roadway and park areas and provide for the use of those parcels, together with a corresponding duty to finance the improvement and maintenance of those areas. The granting of the easement via the dedicatory language on the plat and the ceding of certain rights via the deed restrictions were voluntary limitations upon the grantor's fee in the common areas.
 {¶ 16} On the basis of the foregoing, and in conjunction with the trial court's earlier analysis and findings, we conclude that the trial court correctly held that the 1982 deed modification terminated the right of Dorothy Gaydos and her heirs and assigns to pay for and make improvements to the roadway and boat area. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 17} Appellant argues in its second assignment of error that the trial court erred when it held: 1) that appellees, as mere easement holders, rather than fee simple owners, are entitled to apply to government agencies for a submerged land lease; and 2) that appellant has an obligation to assist appellees in the process of obtaining such a lease.[1]
 {¶ 18} R.C. 1506.11, which deals with submerged land lease applications, relevantly provides: "(B) Whenever the state, acting through the director of natural resources, upon application of anyperson who wants to develop or improve part of the territory, and after notice that the director, at the director's discretion, may give as provided in this section, determines that any part of the territory can be developed and improved or the waters thereof used as specified in the application without impairment of the public right of navigation, water commerce, and fishery, a lease of all or any part of the state's interest therein may be entered into with the applicant, or a permit may be issued for that purpose * * *." (Emphasis added.)
 {¶ 19} R.C. 1506.11 clearly does not limit the granting of a submerged land lease only to the titleholder of record. Thus, the first part of appellant's second assignment of error, challenging appellees' ability to apply for a submerged land lease absent fee simple owner status, is found not well-taken. Such finding renders the second part of the assignment of error, which challenges the trial court's determination that appellant might have a duty to pursue necessary permits on behalf of the lot owners, essentially moot.
 {¶ 20} Appellant argues in its third assignment of error that the trial court erred in ordering that appellees are granted exclusive use of the subdivision common areas. Specifically, the trial court stated: "IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs are granted the right to the use of the roadway, and the exclusive use of the common areas of the Cold Harbor Subdivision, in conformity with the applicable deed restrictions, except that portion of the roadway which crosses the `western 25 feet of the Gaydos property' to Sandusky Bay." (Emphasis added.) Such order directly contradicts the trial court's finding, set forth earlier in the opinion, that "[w]hile Plaintiffs are entitled to use the roadway and park by virtue of a deed conveying then title to lots 21 through 39 of Cold Harbor Subdivision, they are notentitled to exclusive use of the roadway and park." (Emphasis added.) It also contradicts the trial court's additional finding that: "As the fee simple owner of the common areas of Cold Harbor Subdivision,Defendant has the right to use and enjoy the common areas, subject only to the deed restrictions and deed modification." (Emphasis added.) The incongruous order — very likely a typographical error, given the trial court's specific findings to the contrary — was clearly wrong. Accordingly, appellant's third assignment of error is found well-taken.
 {¶ 21} Appellant argues in its fourth, and final, assignment of error that the trial court erred in failing to conduct a trial on the issue of whether the 1962 deed restrictions and 1982 modification were extinguished by two decades of inactivity and intervening legal impossibility. Specifically, appellant claims that appellees' failure to undertake development of a boat ramp or dock for almost 20 years, together with the fact that such development would require obtaining zoning variances, resulted in abandonment of the subject deed restrictions. Although appellant claims to the contrary, appellees point out — and our review of the record confirms — that appellant failed to raise the issue of abandonment before the trial court. Issues raised for the first time on appeal are considered waived. Cicchini v. Crew(Aug. 12, 1999), 8th Dist. No. 75591. Appellant's fourth assignment of error is, therefore, found not well-taken.
 {¶ 22} For all of the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed in part and reversed in part, consistent with this decision and judgment entry. Appellant and appellees are ordered to divide the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P, J. Arlene Singer, J., William J. Skow, J. CONCUR.
 APPENDIX DECISION AND JUDGMENT ENTRY NUNC PRO TUNC {¶ 1} This cause comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment filed February 7, 2005, Affidavit of Counsel Pursuant to Rule 56(F) in Opposition to Motion for Partial Summary Judgment filed April 8, 2005, Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment filed December 16, 2005, Plaintiffs' Supplemental Memorandum in Support of Summary Judgment Motion and Memorandum Contra Defendant's Motion for Summary Judgment filed January 9, 2006, and Reply Memorandum of Defendant Johnson's Island Property Owner's Association ("JIPOA") in Further Support of its Cross-Motion for Summary Judgment filed January 30, 2006.
 {¶ 2} Plaintiffs' Motion for Summary Judgment presents to this Court for consideration whether Plaintiffs can meet the standard for establishing that it is entitled to declaratory judgment and injunctive relief because no genuine issues of material fact exist as to the certain rights claimed by Plaintiffs which include: (1) the right to the use of the roadway, and the exclusive use of the common areas of the Cold Harbor Subdivision, in conformity with the applicable deed restrictions; (2) the exclusive right, as owners of 51% of the lots within the Cold Harbor Subdivision, to determine the nature and extent of any maintenance to Gaydos Drive; (3) enjoining Defendants from interfering with Plaintiffs' exercise of their right to an easement over Gaydos Drive for utility access and other purposes as set forth in the deed restrictions which are the subject of this action; (4) enjoining Defendants from interfering with Plaintiffs' development, use and enjoyment of the park and boat area in the Cold Harbor Subdivision; (5) the exclusive right, as owners of 51% of the lots within the Cold Harbor Subdivision, to apply as the upland owners to all governmental agencies for permits and/or leases necessary for improvements to, and maintenance of, the park and boat area in the subdivision;[2] (6) a permanent injunction prohibiting Defendants from expanding the roadway and construction of any new buildings or other installations that encroach upon the park and the boat area in the subdivision; and (7) a permanent injunction prohibiting the Defendants from interfering with Plaintiffs' use of Gaydos Drive and the boat area pursuant to the deed restrictions.
 {¶ 3} As well, this matter is also before the Court on Defendant's Cross-Motion for Summary Judgment, which presents to this Court whether genuine issues of material fact exist by which Defendant can meet the standard for establishing that Plaintiff has no right to the relief requested.
 {¶ 4} In addressing Plaintiffs Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, this Court has reviewed the record, all pleadings, exhibits and the relevant case law. This Court has also considered the Affidavits of Plaintiffs' expert, Edward Horjes and Defendants' expert, Kenton Kuehnle. As well, this Court has considered the report of its own expert, Thomas Baldwin.
 {¶ 5} This Court finds that there are no genuine issues of material fact in dispute and holds that Plaintiffs have an easement appurtenant and as a result of the deed restrictions and modifications, have the right to: (1) use the roadway and park subject to the applicable deed restrictions; (2) approve or disapprove of improvements to the roadway and park by JIPOA; (3) install and maintain water lines, utilities and drainage over the 50 foot roadway shown on the plat; (4) develop, use and enjoy the park and boat area subject to the applicable deed restrictions;[3] (5) apply as upland owners to all governmental agencies for permits and/or leases necessary for the improvement and maintenance of the park and boat area; (6) enjoin Defendants from expanding the roadway and constructing any buildings or other structures in the park and boat area, except for that portion of the roadway which crosses the "western 25 feet of the Gaydos property" to Sandusky Bay; and (7) enjoin Defendants from interfering with Plaintiffs' use of Gaydos Drive and the boat area pursuant to the deed restrictions.[4]
 I. STANDARD OF REVIEW {¶ 6} Under Civ.R. 56(C), summary judgment is appropriate when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party.[5]
 {¶ 7} The moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that support the requested judgment.[6] If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion.[7] Moreover, it is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial.[8]
 {¶ 8} In reviewing a motion for summary judgment, the court must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion.[9]
 I. BACKGROUND {¶ 9} On September 11, 1962, the Cold Harbor Subdivision plat ("plat") which designated that "[t]he roadway and park are dedicated to the use by owners of lots, their heirs and assigns, together with the owner [Dorothy N. Gaydos], her heirs and assigns" was recorded.[10] On September 18, 1962, the deed restrictions ("restrictions") for the lots within the Cold Harbor Subdivision which pertained to the use and maintenance of the roadway as platted within the subdivision and the use and maintenance of the park and boat ramp or dock as platted within the subdivision were recorded.[11] On August 17, 1982, the Deed of Modification ("modification") pertaining to the use and maintenance of the road as platted within the subdivision and the use and maintenance of the park and boat ramp or dock as platted within the subdivision, was recorded.[12] On May 24, 1988, Plaintiffs acquired title to lots 21 through 39 of Cold Harbor Subdivision by a warranty deed from William Klaehn.[13] On March 30, 1999, Defendant Charles L. Gaydos, Trustee, acquired title to the common areas of Cold Harbor Subdivision by quitclaim deed ("common area conveyance") from Dorothy N. Gaydos.[14]
On September 18, 2000, a "License Agreement between Charles L. Gaydos, Trustee and Johnson's Island Property Owner's Association" was recorded ("license").[15] On June 26, 2003, Defendant JIPOA acquired title from Charles L. Gaydos, Trustee, to the common areas of Cold Harbor Subdivision.[16] On March 21, 2005, Defendant JIPOA acquired from Gregory Gaydos, Yoko Gaydos and Charles Gaydos, the "western 25 feet of the Gaydos property which is burdened by the road, highway and causeway easement," and upon which a tollgate is located ("rectangle").
 II. ANALYSIS {¶ 10} Based on these conveyances and modifications, Plaintiffs assert that Defendant JIPOA has no rights to improve or maintain the common areas of the Cold Harbor Subdivision without their approval. Thus, the determinative issues in this case are whether: (A) the deed modification recorded on August 17, 1982, terminated the right of Dorothy Gaydos and her heirs and assigns, to approve or disapprove of improvements to the roadway and park; (B) the deed modification is in the chain of title to the roadway and park; and (C) the tollgate is located within a platted area and thus, subject to the deed modification.
A. The deed modification recorded on August 17, 1982, terminated theright of Dorothy Gaydos and her heirs and assigns, to approve ordisapprove of improvements to the roadway and park
 {¶ 11} Defendant JIPOA argues that it is "axiomatic that since JIPOA is the current fee owner of the common areas, JIPOA retains the decision making authority regarding improvement and maintenance issues."[17] As such, it argues that it can utilize these areas in any manner that does not unreasonably obstruct the use of these areas by lot owners within the subdivision.[18] Defendant JIPOA claims that "nothing in the deed restrictions granted them [Plaintiffs] affirmative `decision making authority' with regard to the common areas."[19] Plaintiffs, however, argue that the Deed Modification recorded on August 17, 1982, terminated Ms. Gaydos' right to approve or disapprove improvements in the roadway and park.
 {¶ 12} According to the plat of the Cold Harbor Subdivision, "[t]he roadways and park are dedicated to use by owners of lots, their heirs and assigns together with the owner, her heirs and assigns."[20] The record reflects that the fee simple title to the roadway and park was originally vested in Dorothy Gaydos and her heirs and assigns.[21]
Thus, by virtue of a transfer from Dorothy Gaydos to Charles L. Gaydos and from Charles L. Gaydos to JIPOA, JIPOA claims its interest in the roadway and park.[22]
 {¶ 13} The relevant 1962 deed restrictions and the 1982 modifications to them read in paragraph 26, "[e]ach lot owner shall pay his share of the cost of improving and maintaining the park in said subdivision.[23] Each lot owner's share of the total cost of improvements and maintenance shall be in the same proportion as the number of lots he owns is to the total number of lots in said subdivision. Fifty-one percent (51%) of the lot owners shall decide when and what improvements and maintenance shall be done."[24] The difference in the 1982 modified deed restrictions is the absence of the additional statement in the 1962 version that added "[a]ny improvements to or maintenance of the park shall be approved in writing by Grantor, her heirs, and assigns"[25] Paragraph 27 in both recorded deed restrictions pertains to the maintenance and improvements of theboat ramp or dock, with the Grantor's reservation of power again absent in the modified restrictions.[26]
 {¶ 14} Paragraph 25 in the relevant 1962 deed restrictions provides that "Each lot owner shall pay his share of the cost of maintaining the road in said subdivision, which share shall be determined on a front foot basis. Fifty-one per cent of lot owners shall decide when and what road maintenance shall be done." Unlike Paragraphs 26 and 27 in the 1962 version, Grantor made no reservation of power.
 {¶ 15} In the case sub judice, the Plaintiff has demonstrated that Dorothy Gaydos terminated her right to withhold approval for improvements in park and never asserted her right to withhold approval for improvements to the roadway as described in the plat of the Cold Harbor Subdivision.[27] Thus, while Defendants have a fee simple interest in the park and roadway, they are precluded from taking action which would prevent the construction of a docking facility by the Plaintiffs in the Cold Harbor Subdivision.[28] Even the owner of the land cannot take away a right that was granted in prior deed.[29]
Furthermore, while Cold Harbor Subdivision lot owners would be estopped from complaint regarding the use of their common areas for JIPOA's tollbooth or other improvements that went counter to the deed restrictions, JIPOA would be prevented from making future changes or improvements to those common areas without the approval of fifty-one percent (51%) of lot owners.[30]
 B. The deed modification is within the chain of title to the roadwayand park
 {¶ 16} Defendant claims that the restrictions and modifications are "not in the chain of title to the road or park area which is in the subdivision."[31] Arguing that the "subdivision restrictions were created by deeds out and back, to and from a strawman, conveying only the lots in the subdivision," Defendant asserts that "The platted road and the `park' area were not conveyed by such deeds," and that the restrictions are, therefore not within the chain of title of the park and roadway.[32]
 {¶ 17} Defendants claim that pursuant to Spring Lake, Ltd. v. O.F.M.Co.,[33] "no owner of real estate is obligated to abide by restrictions or provisions that do not appear in that owner's chain of title." In Spring Lake, Ltd. v. O.F.M. Co., the Ohio Supreme Court held that appellant did not have actual or constructive notice of the easement where there was no recorded instrument evidencing appellee's easement in appellant's chain of title. Thus, the Court concluded that the easement could not be enforced because appellant did not have constructive notice of a possible easement. As such, Defendants assert that "because the deed restrictions are not in the chain of title to the platted road and park area within the [Cold Harbor Subdivision], they are not binding on JIPOA, the fee simple owner of the platted road and park."[34]
 {¶ 18} In Emrick v. Multicon Builders, Inc.[35] the Ohio Supreme Court affirmed Spring Lake, Ltd., holding "Knowledge that a restriction applies to some lots in a tract does not constitute actual knowledge that those same restrictions apply to other lots within the same tract." Thus, an unrecorded land use restriction is not enforceable against a bona fide purchaser for value unless the purchaser has actual knowledge of the restriction. The Court observed that "Although actual knowledge in some instances may be inferred, it may not be imputed to the purchaser on the basis of mere familiarity with the land use restriction * * * or on the basis of awareness of the bare existence of the document containing the restrictions."[36]
 {¶ 19} Plaintiffs suggest, however, that Spring Lake, Ltd., is inapplicable because it did not involve a platted subdivision, but instead, "piecemeal series of transfers without the benefit of a recorded plat which contained no notice of any easement."[37] InBeecher v. Winkel[38] the Sixth Appellate Court held that "a purchaser is entitled to rely on a recorded plat," emphasizing that "When an owner records a plat subdividing his land, showing streets or other public areas, followed by the selling of lots with a reference thereto, the new owners acquire a private easement in these streets and the owner is estopped to deny the right of the grantee to the use of said street and to all of the benefits contained in said plat." Similarly, in Clagg v.Baycliffs Corp.,[39] this Court held that an implied easement for the purposes of a road can be established by virtue of the original lots in a subdivision having been purchased with reference to a plat showing said road. As to streets and ways delineated on a plat with reference to which a lot is conveyed, Ohio courts have held that an easement therein is created in favor of the grantee.[40]
 {¶ 20} Further, the Ninth Appellate Court in Krzewinski v. EatonHomes, Inc.,[41] held, "Where a deed or grant refers to a plat as furnishing the description of the land conveyed, the plat itself and the words and marks on it are as much a part of the grant or deed, and control, so far as limits are concerned, as if such descriptive features were written out on the face of the deed or grant itself"[42]
 {¶ 21} In the case sub judice, the record reflects that Plaintiffs' deeds reference the recorded plat, which states: "[t]he roadways and park are dedicated to use by owners of lots, their heirs and assigns together with the owner, her heirs and assigns."[43] The legal description on the recorded plat encompasses Gaydos Drive and the park area. Thus, application of the principles set forth in Beecher v.Winkel and Krzewinski v. Eaton Homes, Inc., dictates that Plaintiffs have an easement appurtenant and as a result of the deed restrictions and modifications, have the right to approve or disapprove of improvements to the roadway and park.
C. The tollgate is not located within a platted area and thus, is notsubject to the deed modification
 {¶ 22} Alternatively, Defendants assert that the tollgate is not located in the plat. As a result, Defendants argue that "any deed restrictions upon improvements to the portion of Gaydos Drive lying within the Cold Harbor Subdivision clearly do not apply to JIPOA's property lying outside of the Cold Harbor Subdivision."[44] Defendants claim that "the legal description attached to the plat describes a roadway which does not extend to the bay, but curves to a park ."[45]
Asserting that the tollgate lies outside the plat, Defendants claim that "the roadway, as originally contemplated, took the owners of lots from their respective lots to Bay Shore Road on the north, and the park on the south. It was not provided for the purpose of giving the lot owners access to the causeway crossing over to Johnson's Island, which was not constructed until a later date."[46]
 {¶ 23} The record reflects that in 1964, Ms. Gaydos granted to JII, "Lots No. 21, 22, 23, 24, 25, 26, 27, 28, 29, 32, 33, 34, 35, 36, 37, 38, 39 and 40 in said Plat of Cold Harbour Subdivision."[47] Also conveyed was "a right of way for highway, roadway and causeway purposes in common with the Grantor, her heirs and assigns, over and across the premises designated on said plat as `Gaydos Drive' as shown on the plat of Cold Harbor Subdivision in Lot 28, Section 1 Danbury Township,except that part lying thereof east of the westerly line of Gaydos Drive and south of the southerly line of Lot No. 30 in said subdivision."[48]
 {¶ 24} The conveyance from Ms. Gaydos to JII further provides "Together with a right of way for highway, roadway and causeway purposes in common with the Grantor, her heirs and assigns, over and across the following described premises: Commencing in the west line of Gaydos Drive as shown on the recorded plat of Cold Harbor Subdivision at the southeast corner of Lot No. 30 in said subdivision; thence southerly in the westerly line extended of Gaydos Drive to Sandusky Bay; thence easterly along the shore of Sandusky Bay to a point easterly line of Gaydos Drive extended to a point in the southerly line of said Lot No. 30 in said subdivision extended; thence westerly to the place of beginning."[49]
 {¶ 25} Defendants acknowledge that "To get from Platted Gaydos Drive to the shoreline of Sandusky Bay, the easements crossed over a 25-foot-wide-section of the park and over property owned by Dorothy Gaydos which was located outside the [Cold Harbor Subdivision] plat."[50] Asserting that "the tollgate is located on property owned by JIPOA which is situated south of Gaydos Drive, as originally platted, the tollgate is not located within the platted subdivision," Defendants argue that "any deed restrictions upon improvements to the portion of Gaydos Drive lying within the [Cold Harbor Subdivision] clearly do not apply to JIPOA's property lying outside of the [Cold Harbor Subdivision]."[51]
 {¶ 26} The record supports Defendants' assertion that the deed restrictions do not apply to the 25 foot extension of Gaydos Drive that runs over the property which is owned by JIPOA. In June 2003, JIPOA acquired by warranty deed, all right, title and interest in the common area known as Cold Harbor Subdivision and Gaydos Drive from Defendant Charles Gaydos,[52] and on March 21, 2005, purchased from Gregory Gaydos, Yoko Gaydos and Charles Gaydos, the "western 25 feet of the Gaydos property which is burdened by the road, highway and causeway easement."[53] This rectangular parcel extends the eastern half of Gaydos Drive to Sandusky Bay. The tollgate rests upon this rectangular parcel.
 {¶ 27} As such, the deed modification recorded on August 17, 1982, which terminated the right of Dorothy Gaydos and her heirs and assigns, to approve or disapprove of improvements to the roadway and park does not apply to the rectangular parcel, which is burdened by the road, highway and causeway easement, and upon which the tollgate rests. Defendants may make alterations to the "western 25 feet of the Gaydos property" that is now owned by JIPOA.[54] The remainder of the park and Gaydos Drive as originally platted, and the 25 foot extension of Gaydos Drive crossing the park to Sandusky Bay are subject to the deed modification recorded on August 17, 1985. Plaintiffs have the right to approve or disapprove of improvements to the roadway and park, except for that portion of the roadway which crosses the "western 25 feet of the Gaydos property" to Sandusky Bay.[55]
 D. Application of this Court's conclusions to Plaintiffs' request fordeclaratory judgment and injunctive relief.
 {¶ 28} In its Motion for Summary Judgment, Plaintiffs assert they are entitled to declaratory judgment and injunctive relief resulting from the deed modification recorded on August 17, 1982. Having concluded that (1) the deed modification recorded on August 17, 1982 terminated the right of Dorothy Gaydos and her heirs and assigns, to approve or disapprove of improvements to the roadway and park; (2) the deed modification is in the chain of title to the roadway and park; and (3) the tollgate is not located within a platted area and is not subject to the deed modification, this Court finds:
1. Plaintiffs are not entitled to exclusive use of the roadway and the common areas.
 {¶ 29} While Plaintiffs are entitled to use the roadway and park by virtue of a deed conveying to them title to lots 21 though 39 of Cold Harbor Subdivision,[56] they are not entitled to exclusive use of the roadway and park. The plat designated that "[t]he roadway and park are dedicated to the use by owners of lots, their heirs and assigns, together with the owner [Dorothy Gaydos], her heirs and assigns."[57]
Defendant JIPOA acquired an interest in the common area known as Cold Harbor subdivision and in Gaydos Drive from Defendant Charles Gaydos.[58] Defendant Gaydos had acquired his interest from his mother, Dorothy Gaydos Saunders.[59]
2. Plaintiffs, as owners of 51% of the lots within the Cold Harbor Subdivision, have the right to determine the nature and extent of any maintenance to Gaydos Drive.
 {¶ 30} Defendants argue that "As the owner of the burdened estate, JIPOA is fully entitled to maintain and improve the property so long as such activities do not unreasonably interfere with the lot owner's enjoyment of their easement rights."[60] Defendant further argues that as the fee owner, it "has the right to maintain Gaydos Drive so long as JIPOA does not ask the Plaintiffs to pay for it."[61] The deed modification recorded on August 17, 1982, provides that "Fifty-one percent of the lot owners shall decide when and what improvements and maintenance shall be done * * *" to the park. Although the deed modification is silent as to improvements and maintenance to Gaydos Drive, Paragraph 25 in the relevant 1962 deed restrictions provides that "Each lot owner shall pay his share of the cost of maintaining the road in said subdivision, which share shall be determined on a front foot basis. Fifty-one per cent of lot owners shall decide when and what road maintenance shall be done." Unlike Paragraphs 26 and 27 in the 1962 version, Grantor's reservation of power is absent. In the absence of language reserving it the right to do so, Defendants may not interfere with Plaintiffs' right to determine the nature and extent of any maintenance to Gaydos Drive.
3. Defendants may not interfere with Plaintiffs easement over Gaydos Drive for utility access and other purposes as set forth in the deed restrictions and deed modification.
 {¶ 31} The relevant 1962 deed restrictions and the 1982 modifications to them read in paragraph 21, "Easements for installation and maintenance of water lines, utilities and drainage over the 50 foot roadway shown on the plat of this subdivision are reserved by Grantor, for herself, her heirs and assigns, for the benefit of herself and owners of lots in said subdivision, and owners of lots immediately adjacent thereto and in any future subdivision created by said grantor, her heirs and assigns."[62] The difference in the 1982 modified deed restrictions is the statement in the 1982 version which added "Nothing in this clause shall be construed to prevent the dedication of Gaydos Drive to public use and the occupation thereof by the appropriate public body."[63]
 {¶ 32} Unlike Paragraph 26 and 27 in both recorded deed restrictions which pertained to the maintenance and improvements of the park and the boat ramp or dock, the Grantor made no reservation of power to approve or disapprove the installation of utilities over Gaydos Drive.[64] In the absence of language requiring approval by Grantor, her heirs, and assigns, Defendant JIPOA may not interfere with Plaintiffs easement over Gaydos Drive for utility access and other purposes as set forth in the deed restrictions.
4. Defendants may not interfere with Plaintiffs' development, use and enjoyment of the park and boat area.
 {¶ 33} Plaintiffs have an easement appurtenant and as a result of the deed restrictions and modifications, have the right to approve or disapprove of improvements to the park and boat area. In the absence of a reservation of power to approve or disapprove any improvements or maintenance of the park or any construction or maintenance of the dock or ramp, Defendant JIPOA may not interfere with Plaintiffs' development of a dock or ramp. On March 30, 1999, Dorothy Gaydos granted to Defendant Charles L. Gaydos, Trustee, "all right, title, and interest of the Grantor in the common areas specifically including, but not limited to, the roadways, beach area, and park as shown upon the Plat of Cold Harbor Subdivision recorded in Plats 12-38B of the Ottawa County Plat Records."[65] Defendant Charles L. Gaydos then granted to Defendant JIPOA these same rights.[66] As the fee simple owner of the common areas of Cold Harbor Subdivision, Defendant has the right to use and enjoy the common areas, subject only to the deed restrictions and deed modification.[67]
5. Plaintiffs, as owners of 51% of the lots within the Cold Harbor Subdivision, have the exclusive right to determine the nature and extent of any improvements to, and maintenance of the park and boat area.
 {¶ 34} Defendant JIPOA argues that it "owns the park and `boat area' in fee simple absolute subject to the rights of Plaintiffs."[68] As a result, Defendant JIPOA argues that as the owner of the burdened estate, it "is fully entitled to make use of the park property so long as JIPOA's uses or improvements do not interfere with the benefited owner's enjoyment of their easement rights."[69] The deed modification recorded on August 17, 1982, however, provides that "Fifty-one percent of the lot owners using said [boat] ramp and dock in any particular year shall decide what improvements are necessary and the cost shall be borne equally by all lot owners using the same that year."[70] The language of the deed modification explicitly provides that Plaintiffs are entitled to decide what improvements are necessary to the boat ramp and a dock. Thus, Defendant may not interfere with Plaintiffs' right to construct, maintain or improve a boat ramp and dock.
6. Plaintiffs, as owners of 51% of the lots within the Cold Harbor Subdivision, have the right to apply as the upland owners to all governmental agencies for permits and/or leases necessary for improvements to, and maintenance of the park and boat area in the subdivision.
 {¶ 35} Defendants argue that "Ohio law clearly provides that littoral (shoreline) property owners have the right to reasonably use the water fronting their property, with no corresponding similar provisions as to easement holders."[71] As such, Defendants assert that Plaintiffs are "asking this Court to create a status for them heretofor not recognized in Ohio — holders of nonexclusive easements with the rights of upland owners."[72]
 {¶ 36} In Lemley v. Stevenson,[73] the Sixth Appellate Court held that "Littoral rights are those ownership rights of a property owner whose land abuts a lake to the use and enjoyment of the waters of and the land underlying the lake." Owners of properties that border Lake Erie have limited littoral rights based upon the "public trust" doctrine.[74] In the present case, Defendant JIPOA possess littoral rights because their property borders Lake Erie. In addition to the rights common to the public, littoral owners have the right to "construct landings, wharves or piers" in order to have navigation access "when not forbidden by public law"[75] The legislature, through R.C. 1506.11, has authorized the Ohio Department of Natural Resources to regulate the submerged lands of Lake Erie by leases of "all or any part of the state's interest" in the waters and lands presently underlying the waters of Lake Erie.[76]
 {¶ 37} Defendants' claim that only the littoral owners may apply for a submerged land lease is contradicted by the submerged land lease granted by the State of Ohio to Johnson's Island Incorporated (JII) for the construction of a Causeway, by Dorothy Gaydos Saunders, who granted JII certain rights of access from Johnson's Island.[77] Dorothy Gaydos Saunders was the record owner of the common areas of Cold Harbor Subdivision, including the park and boat area. Similarly, Defendants' claim that its littoral rights are unaffected by the easement providing that lot owners of Cold Harbor Subdivision have the right to construct, maintain or improve a boat ramp and dock, is unsupported by Ohio Courts.
 {¶ 38} Having held that Plaintiffs are entitled to a boat ramp and a dock and shall decide what improvements are necessary, Defendant may not interfere with Plaintiffs' right to construct, maintain or improve a boat ramp and dock by preventing Plaintiffs from applying for necessary and appropriate permits to do so. As a result, this Court finds that Plaintiffs have the right to apply to all governmental agencies for permits and/or leases necessary for improvements to, and maintenance of the park and boat area in the subdivision.
7. Defendants are permanently enjoined from expanding the roadway and constructing any new buildings or other installations which encroach upon the park and boat area.
 {¶ 39} The deed modification recorded on August 17, 1982, terminated the right of Dorothy Gaydos and her heirs and assigns, to approve or disapprove of any improvements to the roadway and park. Paragraph 25 of the 1962 deed restrictions provides that ""Fifty-one per cent of lot owners shall decide when and what road maintenance shall be done."[78]
As such, Defendants are permanently enjoined from expanding the roadway.
 {¶ 40} Paragraph 25 of the 1962 deed restrictions provides that "No structure of any kind except a building housing a water pump and well and sanitary facilities that may subsequently be required by the State of Ohio, and Ottawa County Board of Health, shall be placed maintained or erected in the park."[79] Thus, Defendants are permanently enjoined from constructing any new buildings or other installations which encroach upon the park and boat area. The tollgate, however, is not located within the platted area and is not subject to the deed modification. Because the deed modification does not apply to the rectangular parcel which is burdened by the road, highway and causeway easement, and upon which the tollgate rests, Defendant JIPOA may make alterations to the "western 25 feet of the Gaydos property" which it now owns.[80]
 {¶ 41} Further, the remainder of the park and Gaydos Drive as originally platted, and the 25 foot extension of Gaydos Drive crossing the park to Sandusky Bay are subject to the deed modification recorded on August 17, 1985.[81] Plaintiffs have the right to approve or disapprove of improvements to the roadway and park, except for that portion of the roadway which is outside of the plat and which crosses the "western 25 feet of the Gaydos property" to Sandusky Bay.[82]
 {¶ 42} As such, Defendant JIPOA may only construct, modify or improve any structure resting on the "western 25 feet of the Gaydos property" (the easterly 25 foot extension of Gaydos Drive) to Sandusky Bay.[83]
Since the tollgate rests upon this property which is outside the plat, Plaintiffs may not enjoin Defendants from constructing a new tollgate or extending the easterly 25 foot lane further onto its property in order to facilitate the collection of tolls, or for the purpose of maintaining a gated entrance to Johnson's Island.
8. Defendants are permanently enjoined from interfering with Plaintiffs' use of Gaydos Drive, the park and boat area pursuant to the deed provisions.
 {¶ 43} This Court has held that Plaintiffs are not entitled to exclusive use of the roadway and park. The plat designated that "[t]he roadway and park are dedicated to the use by owners of lots, their heirs and assigns, together with the owner (Dorothy Gaydos), her heirs and assigns."[84] However, as lot owners, Plaintiffs are entitled to use the roadway and park and have the right to approve or disapprove of improvements to the roadway, park and boat area, excepting that portion of the roadway which lies outside of the plat. Thus, Defendants are enjoined from interfering with Plaintiffs' use of Gaydos Drive, the park and boat area pursuant to the deed restrictions and as clarified in this Decision.
 III. CONCLUSION {¶ 44} Having concluded that (1) the deed modification recorded on August 17, 1982 terminated the right of Dorothy Gaydos and her heirs and assigns, to approve or disapprove of improvements to the roadway and park; (2) the deed modification is in the chain of title to the roadway and park; and (3) the tollgate is not located within a platted area and is not subject to the deed modification, this Court finds Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment to be appropriate in part. Accordingly,
 {¶ 45} IT IS ORDERED, ADJUDGED, and DECREED that Plaintiffs Motion for Summary Judgment is GRANTED in part and DENIED in part;
 {¶ 46} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Defendants' Motion is GRANTED in Part and DENIED in part;
 {¶ 47} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs are granted the right to the use of the roadway, and the exclusive use of the common areas of the Cold Harbor Subdivision, in conformity with the applicable deed restrictions, except that portion of the roadway which crosses the "western 25 feet of the Gaydos property" to Sandusky Bay;[85]
 {¶ 48} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs, as owners of 51% of the lots within the Cold Harbor Subdivision, shall determine the nature and extent of any maintenance to Gaydos Drive;
 {¶ 49} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs, as owners of 51% of the lots within the Cold Harbor Subdivision, have the right to apply as the upland owners to all governmental agencies for permits and/or leases necessary for improvements to, and maintenance of, the park and boat area in the subdivision;
 {¶ 50} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Defendants are enjoined from interfering with Plaintiffs' exercise of their right to an easement over Gaydos Drive for utility access and other purposes as set forth in the deed restrictions which are the subject of this action;
 {¶ 51} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Defendants are enjoined from interfering with Plaintiffs' development, use and enjoyment of the park and boat area in the Cold Harbor Subdivision;
 {¶ 52} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs are granted a permanent injunction prohibiting Defendants from expanding the roadway and construction of any new buildings or other installations that encroach upon the park and the boat area in the subdivision;
 {¶ 53} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs are granted a permanent injunction prohibiting the Defendants from interfering with Plaintiffs' use of Gaydos Drive, the park and boat area pursuant to the deed restrictions and this Court's exception of that portion of the roadway which crosses the "western 25 feet of the Gaydos property" to Sandusky Bay;
 {¶ 54} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs are enjoined from interfering with Defendants' use of that portion of the roadway ("rectangular parcel") which is outside of the plat, which crosses the "western 25 feet of the Gaydos property" to Sandusky Bay, and is not subject to the deed modification;
 {¶ 55} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that the expense of this Court's expert, Mr. R. Thomas Baldwin, Esq., in the amount of $2,335.50 shall be assessed as costs of this proceeding;
 {¶ 56} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Defendant shall pay 50% of the costs of Mr. Baldwin to the Clerk of Courts within 30 days;
 {¶ 57} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs deposit shall not be refunded and Plaintiff shall pay 50% of the costs of Mr. Baldwin to the Clerk of Courts within 30 days;
 {¶ 58} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that upon receipt of the above payments for Mr. Baldwin's services, Clerk of Courts shall pay to Mr. Baldwin at P.O. Box 101, Marysville, OH 43040, the amount of $2,335.50 for his services;
 {¶ 59} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that the balance of the costs of this proceeding is to be paid by Defendant JIPOA;
 {¶ 60} IT IS FURTHER ORDERED, ADJUDGED, and DECREED that pursuant to Civ. R. 54(B), this Court finds that there is "no just reason for delay; "
 {¶ 61} Clerk of Courts shall send copies of this Decision and JudgmentEntry to all parties of record or their counsel by regular U.S.Mail.
MAY 31, 2006
______________________________ CHARLES F. KURFESS, JUDGE
 CERTIFICATE OF SERVICE
A copy of the foregoing "Judgment Entry" was delivered by regular mail, this 31st day of May, 2006, to the following:
Steven M. Ott Kimberly M. Sutter 55 Public Square Suite 1250 Cleveland, OH 44113-1901 Attorney for Plaintiff
Gerald P. Ferguson Gina R. Russo Vorys, Sater, Seymour Pease, L.L.P. 52 East Gay Street P.O. Box 1008 Columbus, OH 43216-1008
Attorneys for Defendants Johnson's Island Property Owners Association,B.K. Halblaub and Harold R. Clagg
Duffield E. Milkie Buckingham, Lucal, McGookey Zeiher, Co., L.P.A. 414 Wayne Street Sandusky, OH 44870
Attorney for Defendants Johnson's Island Property Owners Association,B.K. Halblaub and Harold R. Clagg
MAY 31, 2006
_____________________________ JOAN MONNETT, CLERK OF COURTS/DEPUTY CLERK
[1] In fact, the trial court did find that appellees "have the right to apply to all governmental agencies for permits and/or leases necessary for improvements to, and maintenance of the park and boat area in the subdivision." Seemingly inconsistently, however, the trial also court also found (although in a footnote located in another section of its opinion): "As well, JIPOA, who as fee simple owners may have the authority and the responsibility to undertake any submerged land lease arrangements for the common area, still may not obstruct the use of the land as granted in the easement by refusing to pursue the necessary permits on behalf of the Cold Harbor Subdivision lot owners." In this statement, the trial court indicated uncertainty as to whether appellees would be entitled under Ohio law to apply for a submerged land lease.
[2] Boat area refers to boat ramp and dock.
[3] See Vol. 220, Pg. 316, Ottawa County Records (General Warranty Deed setting forth deed restrictions for Lots 20- 40 of Cold Harbor); Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification, changing and modifying restrictions No. 1, 3, 4, 12, 21, 26, and 27).
[4] See Vol. 220, Pg. 316, Ottawa County Records (General Warranty Deed setting forth deed restrictions for Lots 20- 40 of Cold Harbor); Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification, changing and modifying restrictions No. 1, 3, 4, 12, 21, 26, and 27).
[5] Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St. 3d 367,369-370, 696 N.E. 2d 201, Citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 1995 Ohio 286, 653 N.E. 2d 1196, paragraph three of the syllabus; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 505.
[6] Vahila v. Hall (1997), 77 Ohio St. 3d 421, 430; see alsoDresher v. Burt (1996), 75 Ohio St. 3d 280, 293, 662 N.E.2d 264 ("the moving party cannot discharge its initial burden under Civ.R.56 simply by making a conclusory assertation that the non-moving party has no evidence to prove its case").
[7] Vahila v. Hall (1997), 77 Ohio St. 3d 421; see also Mitseff v.Wheeler (1988), 38 Ohio St. 3d 112.
[8] Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,91 L. Ed. 2d 265, 106 S. Ct. 2548; Mitseff v. Wheeler (1988), 38 Ohio St. 3d 112,115, 526 N.E.2d 798; Dresher v. Burt (1996), 75 Ohio St. 3d 280.
[9] Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St. 3d 45;Harless v. Willis Day Warehousing (1978), 54 Ohio St. 2d 64; Murphy v.Reynoldsburg (1992), 65 Ohio St. 3d 356, 358-359, 604 N.E.2d 138 (Doubts must be resolved in favor of the nonmoving party).
[10] Vol. 12, Pg. 38B, Ottawa County Plat Records.
[11] Vol. 220, Pg. 316, Ottawa County Records (General Warranty Deed setting forth deed restrictions for Lots 20-40 of Cold Harbor); see Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification, changing and modifying restrictions No. 1, 3, 4, 12, 21, 26, and 27).
[12] Vol. 295, Pg. 812, Ottawa County Records (Deed of Modification).
[13] Vol. 330, Pg. 824, Ottawa County Records (Warranty Deed).
[14] Vol. 433, Page 202, Ottawa County Records (Quitclaim Deed).
[15] Vol. 709, Page 461, Ottawa County Records (License Agreement Between Charles L. Gaydos, Trustee and Johnson's Island Property Owners Association).
[16] Vol. 929, Pgs. 520-521, Ottawa County Records (Warranty Deed).
[17] Reply Memorandum of Defendant Johnson's Island Property Owner's Association in Further Support of Its Cross-Motion for Summary Judgment, at 5.
[18] Reply Memorandum of Defendant Johnson's Island Property Owner's Association in Further Support of Its Cross-Motion for Summary Judgment, at 5. See Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 9.
[19] Reply Memorandum of Defendant Johnson's Island Property Owner's Association in Further Support of Its Cross-Motion for Summary Judgment, at 6.
[20] Vol. 12, Pg. 38B, Ottawa County Plat Records.
[21] See, Cold Harbor Subdivision plat recorded September 11, 1962 (Vol. 12, Pg. 38B, Ottawa County Plat Records).
[22] Quitclaim deed from Dorothy N. Gaydos, nka Dorothy Gaydos Saunders to Charles L. Gaydos, Trustee, March 30, 1999 (Vol. 133, Pg. 202, Ottawa County Records); Warranty deed from Charles L. Gaydos to Johnsons Island Property Owners Association. See, Complaint, Exhibit G.
[23] Emphasis added.
[24] Deed of Modification, recorded August 17, 1982 (Vol. 295, Pg. 872, Ottawa County Records), at 873, ¶ 26.
[25] Deed restrictions for Cold Harbor Subdivision recorded September 18, 1962 (Vol. 220, Pg. 316, Ottawa County Records), at 318, ¶ 27. Both the original and modified deed restrictions contain language which seems to conflict with Dorothy Gaydos Saunder's intent. Given that she released her power to approve and disapprove of plans to improve the park and dock areas specifically as part of the negotiation with William Klaehn, III in the sale of multiple lots so that he would be empowered to make improvements as he felt appropriate, the language in paragraphs 26 and 27 ought to read "the owners of fifty-one percent (51%) of the lots" instead of "fifty-one percent (51%) of the lot owners."
[26] Id.; Deed of Modification, recorded August 17, 1982 (Vol. 295, Pg. 872, Ottawa County Records), at 873, ¶ 26. Emphasis added.
[27] See, Deed of Modification recorded August 17, 1982 (Vol. 295, Pg. 872, Ottawa County Records).
[28] As well, JIPOA, who as fee simple owners may have the authority and responsibility to undertake any submerged land lease arrangements for the common area, still may not obstruct the use of the land as granted in the easement by refusing to pursue the necessary permits on behalf of the Cold Harbor Subdivision lot owners. See, deed recorded March 30, 1999 (Vol. 433, Pg. 202, Ottawa County Records) transferring title in said property to Charles L. Gaydos from Dorothy Gaydos Saunders, which states in part: "[a]nd being all right, title, and interest of Grantor in the common areas specifically including, but not limited to, the roadways, beach area, and park as shown on the Plat of Cold Harbor Subdivision recorded in Plats 12-38B of the Ottawa County Records."
[29] Ashleman v. Alkop, Sixth Dist. No. OT-83-2, 1983 Ohio App. LEXIS 11563.
[30] JIPOA would need to obtain the approval of "fifty-one percent (51%) of the lot owners" before undertaking any "improvements to or maintenance of the park." Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction, at 2; See, Cold Harbor Subdivision plat recorded September 9, 1962 (Vol. 12, Pg. 38B, Ottawa County Records); Deed restrictions for Cold Harbor Subdivision recorded September 18, 1962 (Vol. 220, Pg. 316, Ottawa County Records); Deed of Modification recorded August 17, 1982 (Vol. 295, Pg. 872, Ottawa County Records).
[31] Spring Lake, Ltd. v. O.F.M. Co. (1984) 12 Ohio St. 3d 333,467 N.E.2d 537, 1984 Ohio LEXIS 1221.
[32] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 3.
[33] Spring Lake, Ltd. v. O.F.M. Co. (1984) 12 Ohio St. 3d 333,467 N.E.2d 537, 1984 Ohio LEXIS 1221.
[34] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 4.
[35] Emrick v. Multicon Builders, Inc. (1991), 57 Ohio St. 3d 107,566 N.E.2d 1189, 1991 Ohio LEXIS 181.
[36] Emrick v. Multicon Builders, Inc. (1991), 57 Ohio St. 3d 107,566 N.E.2d 1189, 1991 Ohio LEXIS 181.
[37] Plaintiffs' Supplemental Memorandum in Support of Summary Judgment Motion and memorandum Contra Defendants' Motion for Summary Judgment, at 5.
[38] Beecher v. Winkel, (1978), 59 Ohio App.2d 65, 391 N.E.2d 889,1978 Ohio App. LEXIS 7581.
[39] Clagg v. Baycliffs Corp., 6th Dist. No. OT-96-023, 1997 Ohio App. LEXIS 752, citing Beechler v. Winkel (1978),59 Ohio App. 2d 65, 72, 392 N.E.2d 889.
[40] See, e.g., Beecher v. Winkel, (1978), 59 Ohio App.2d 65,391 N.E.2d 889, 1978 Ohio App. LEXIS 7581.; Krzewinski v. Eaton Homes,Inc. (1958), 108 Ohio App. 175, 161 N.E.2d 88; Finlaw v. Hunter (1949),87 Ohio App. 543, 96 N.E.2d 319.
[41] Krzewinski v. Eaton Homes, Inc. (1958), 108 Ohio App. 175,161 N.E.2d 88, at paragraph 3 of the syllabus.
[42] Krzewinski v. Eaton Homes, Inc. (1958), 108 Ohio App. 175,161 N.E.2d 88, quoting Westbrook v. Comer, 197 Ga., 433,29 S. E. (2d), 574.
[43] Cold Harbor Subdivision plat recorded September 9, 1962 (Vol. 12, Pg. 38B, Ottawa County Records).
[44] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 5.
[45] Affidavit of Kenton L. Kuehnle, at Exhibit B, Page 6. See Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 4.
[46] Affidavit of Kenton L. Kuehnle, at Exhibit B, page 6.
[47] Vol. 225, Page 717 of Ottawa County Records (Warranty Deed).
[48] Vol. 225, Page 717 of Ottawa County Records (Warranty Deed). Emphasis added.
[49] Vol. 225, Page 717 of Ottawa County Records (Warranty Deed) Emphasis added.
[50] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiffs Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 5.
[51] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 5. See Kuehnle Affidavit, Exhibit C, Page 6.
[52] Vol. 929, Pg. 520, Ottawa County Records (Warranty Deed).
[53] Motion of Defendants Charles L. Gaydos and Gregory G. Gaydos to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment. See Vol. 1059, Pg. 784, Ottawa County Records (Quitclaim Deed).
[54] Motion of Defendants Charles L. Gaydos and Gregory G. Gaydos to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment. See Vol. 1059, Pg. 784, Ottawa County Records (Quitclaim Deed).
[55] Motion of Defendants Charles L. Gaydos and Gregory G. Gaydos to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment. See Vol. 1059, Pg. 784, Ottawa County Records (Quitclaim Deed).
[56] Vol. 225, Page 717 of Ottawa County Records (Warranty Deed).
[57] Vol. 12, Pg. 38B, Ottawa County Plat Records.
[58] Amended Complaint, at ¶ 3. See Vol. 709, Page 461, Ottawa County Records (License Agreement Between Charles L. Gaydos, Trustee and Johnson's Island Property Owners Association).
[59] Amended Complaint, at ¶ 3. See Vol. 433, Page 202, Ottawa County Records (Quitclaim Deed).
[60] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 8, citing Affidavit of Kenton L. Kuehnle, at Exhibit B, page 7.
[61] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 7-8.
[62] Vol. 220, Pg. 316, Ottawa County Records (General Warranty Deed setting forth deed restrictions for Lots 20-40 of Cold Harbor); see Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification, changing and modifying restrictions No. 1, 3, 4, 12, 21, 26, and 27).
[63] Deed of Modification, recorded August 17, 1982 (Vol. 295, Pg. 872, Ottawa County Records), at 873, ¶ 26.
[64] See Vol. 220, Pg. 316, Ottawa County Records (General Warranty Deed) and Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification).
[65] Vol. 433, Page 202, Ottawa County Records (Quitclaim Deed).
[66] Vol. 929, Pg. 520, Ottawa County Records (Quitclaim Deed).
[67] See Vol. 220, Pg. 316, Ottawa County Records (General Warranty Deed setting forth deed restrictions for Lots 20-40 of Cold Harbor); Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification, changing and modifying restrictions No. 1, 3, 4, 12, 21, 26, and 27).
[68] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 11.
[69] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 12. See Affidavit of Kenton L. Kuehnle, at Exhibit B, Pg. 7.
[70] Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification).
[71] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiffs Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 13.
[72] Memorandum of Defendant Johnson's Island Property Owners Association in Opposition to Plaintiffs Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment, at 13.
[73] Lemley v. Stevenson (1995), 104 Ohio App. 3d 126, 133,661 N.E.2d 237.
[74] Lemley v. Stevenson (1995), 104 Ohio App. 3d 126, 133,661 N.E.2d 237.
[75] United States v. River Rouge Improvement Co. (1926),269 U.S. 411, 418, 46 S. Ct. 144, 146, 70 L. Ed. 339.
[76] See R.C. 1506.10. See also Ohio Adm. Code 1501-6-01 et seq.
[77] Vol. 23, Pg, 525, Ottawa County Recorder (Lease of Submerged Lands of Lake Erie to Johnson's Island, Inc.).
[78] See Vol. 220, Pg. 316, Ottawa County Records (General Warranty Deed setting forth deed restrictions for Lots 20-40 of Cold Harbor); see Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification, changing and modifying restrictions No. 1, 3, 4, 12, 21, 26, and 27). Emphasis added.
[79] See Vol. 220, Pg. 316, Ottawa County Records (General Warranty Deed setting forth deed restrictions for Lots 20-40 of Cold Harbor); see Vol. 295, Pg. 872, Ottawa County Records (Deed of Modification, changing and modifying restrictions No. 1, 3, 4, 12, 21, 26, and 27).
[80] Motion of Defendants Charles L. Gaydos and Gregory G. Gaydos to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment. See Vol. 1059, Pg. 784, Ottawa County Records (Quitclaim Deed).
[81] Vol. 295, Pg. 872, Ottawa County Records.
[82] Motion of Defendants Charles L. Gaydos and Gregory G. Gaydos to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment. See Vol. 1059, Pg. 784, Ottawa County Records (Quitclaim Deed).
[83] Motion of Defendants Charles L. Gaydos and Gregory G. Gaydos to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment. See Vol. 1059, Pg. 784, Ottawa County Records (Quitclaim Deed).
[84] Vol. 12, Pg. 38B, Ottawa County Plat Records.
[85] Motion of Defendants Charles L. Gaydos and Gregory G. Gaydos to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment. See Vol. 1059, Pg. 784, Ottawa County Records (Quitclaim Deed).