SPRING LAKES, LTD., APPELLANT, *v.* O.F.M. COMPANY, APPELLEE.

[Cite as Spring Lakes, Ltd. *v.* O.F.M. Co. (1984), 12 Ohio St. 3d 333.]

(No. 83-1787—Decided August 15, 1984.)

*Messrs. Brouse & McDowell, Mr. Karl S. Hay, Mr. John W. Solomon* and *Mr. Jay P. Porter,* for appellant.

*Messrs. Joondeph & Shaffer* and *Mr. David H. Shaffer,* for appellee.

*Per Curiam.* The issue presented by this appeal is whether appellant's property is subject to an easement that was recorded subsequent to the effective date of the root of title, but which was recorded outside the chain of title of the servient estate. We hold that appellant's property is not subject to the easement in question.

Initially appellee argues that the Marketable Title Act, R.C. 5301.47 through 5301.56, and this court's decision in *Heifner* v. *Bradford* (1983), 4 Ohio St. 3d 49, are dispositive. In our view, the Marketable Title Act has no application to the facts of the case at bar. As it was stated in *Toth* v. *Berks Title Ins. Co.* (1983), 6 Ohio St. 3d 338, 342:

"In general, the Marketable Title Act operates to extinguish interests and claims in existence prior to the effective date of the root of title. See R.C. 5301.47(A) and 5301.50. However, R.C. 5301.49 and 5301.51 provide that certain interests in existence prior to the root of title may be preserved if properly noted subsequent to the root of title. As such, the Marketable Title Act does not bear upon interests affecting the realty which are created subsequent to the date of the root of title."

This general rule is borne out by R.C. 5301.47(A) which states:

" 'Marketable record title' means a title of record, as indicated in section 5301.48 of the Revised Code, *which operates to extinguish such interests and claims, existing prior to the effective date of the root of title,* as are stated in section 5301.50 of the Revised Code." (Emphasis added.)

Further, R.C. 5301.50 provides:

"Subject to the matters stated in section 5301.49 of the Revised Code, such record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, *the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title.* All such interests * * * are hereby declared to be null and void." (Emphasis added.)

It follows from this general rule that, since the easement in the case at bar was created in 1975, admittedly subsequent to appellant's root of title,

the Marketable Title Act has no impact upon appellant's claim that its property is not subject to the easement in favor of appellee. This is clearly not a situation where it is claimed that an interest created prior to the root of title is extinguished.

R.C. 5301.49 emphasizes this point. That section provides:

"Such record marketable title shall be subject to:

"* * *

"(D)  Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or [sic] record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by operation of section 5301.50 of the Revised Code;"

It is apparent at this point that R.C. 5301.49 contains *exceptions* to the application of the Marketable Title Act. The situation presented in this appeal thus falls within the exception to the Marketable Title Act enumerated in R.C. 5301.49(D) since the recorded instrument upon which appellee relies was recorded *subsequent* to the root of title.[1] Appellee's reliance on the Marketable Title Act, and cases construing the Act, is therefore misplaced and inappropriate.

As it was stated in *Heath* v. *Turner* (1983), 309 N.C. 483, 308 S.E. 2d 244, 249:

"* * * The marketable record title * * * of the defendants does not affect or extinguish the rights, estates, interests, claims or charges (of the plaintiffs or anyone else) created subsequent to the beginning of [the statutory] period. * * * The exceptions listed under G.S. § 47B - 3 [analogous to R.C. 5301.49(D)] do not serve as a sword to establish title in the party claiming a marketable title under the Act but instead serve as a shield to protect from extinguishment the rights therein excepted. * '* *'"

With reference to North Carolina's version of R.C. 5301.49(D), the court in *Heath, supra,* at 251 observed:

"* * * Even though a party establishes a marketable record title to the property in question, it cannot extinguish a competing independent title if that competing title is created by a title transaction recorded *after* the beginning date for the establishment of the marketable record title." (Emphasis added.)

Other courts have recognized that it was not the intent of marketable title acts to release titles from competing claims when the title transaction is

---

[1] That is why *Heifner* v. *Bradford, supra,* does not compel affirmance of the court of appeals. The issue in *Heifner* was not whether a purchaser of real estate had constructive notice of an encumbrance on the property, but whether, under R.C. 5301.49(D), a title transaction recorded subsequent to the root of title was required to appear within the chain of title claimed to be marketable. It is of no consequence to the instant action that in *Heifner* we held that a title transaction under R.C. 5301.49(D) could arise from an independent chain of title. R.C. 5301.47 through 5301.56, the Marketable Title Act, simply has no bearing herein.

filed or recorded subsequent to the root of title. See, *e.g., Hollander v. Hattaway* (Fla. App. 1983), 438 So. 2d 456, 468, and *Mizla v. Depalo* (1981), 183 Conn. 59, 66, 438 A. 2d 820.

The question remains whether appellant's property is subject to appellee's easement. The resolution of this question depends on whether appellant purchased the property with actual or constructive notice of the easement. The trial court determined that appellant did not have actual notice and that issue has not been appealed. It is appellee's contention that appellant had constructive notice of the easement since the easement was recorded in a deed from appellee's grantor who was also a grantor in appellant's chain of title. We reject appellee's argument and hold that appellant may not be charged with constructive notice of the easement.

In *Sternberger v. Ragland* (1897), 57 Ohio St. 148, 156, this court stated:

"When a prospective purchaser finds a complete record title in the proposed seller, he is not bound to examine for mortgages made to the latter after he became the owner; such a mortgage is not in his chain of title, and is not, therefore, constructive notice to a subsequent purchaser of a prior unrecorded deed made by him to the mortgagor." See R.C. 5301.25.

Thus, in *Sternberger, supra,* this court adopted the view that, in order for a purchaser of real property to be charged with constructive notice of an encumbrance contained in a prior recorded instrument, the prior instrument must be recorded in the purchaser's chain of title. This principle was explained and affirmed in *Wayne Bldg. & Loan Co. v. Yarborough* (1967), 11 Ohio St. 2d 195, 211 [40 O.O.2d 182], where it was stated:

"In the *Sternberger* case, a title searcher could obviously not have found the unrecorded deed out from the bona fide purchaser's grantor, and would, therefore, have had no reason to search for encumbrances back to such grantor, when he appeared of record to have title." Cf. *Renner v. Johnson* (1965), 2 Ohio St. 2d 195 [31 O.O.2d 406].

The rationale for this rule is apparent. It was stated in the syllabus in *Glorieux v. Lighthipe* (1915), 88 N.J. Law 199, 96 A. 94:

"A purchaser of other land from the same grantor is not charged with notice of building restrictions contained in an earlier deed not in his chain of title."

The court in *Glorieux, supra,* at 203 further observed that, "it would impose an intolerable burden to compel him to examine all conveyances made by every one in his chain of title." See, also, *Hancock v. Gumm* (Ga. 1921), 107 S.E. 872, 877; *Sabo v. Horvath* (Alaska 1976), 559 P. 2d 1038, 1044. The court in *Hancock v. Gumm, supra,* at 877 stated:

"'* * * [W]here a recorded deed to a lot forming part of a larger tract contains restrictive covenants, which by the terms of the deed are not only to apply to the lot conveyed, but, as in this case, to other lands of the grantor, a purchaser of one of the lots is not charged with notice of the covenant contained in a prior deed from the common grantor to another lot or parcel of the general tract."

Finally, it is noted in 1 Patton on Titles (2 Ed. 1957) 231-232, Section 69:
"* * * [T]he only fair rule is to hold that the record of an instrument will not afford constructive notice, if it is outside the chain under which a purchaser or incumbrancer claims title or lien. To hold otherwise would be to impose upon such parties the duty of making a general search of every instrument filed for record, without affording facilities therefor. * * *"

See, also, cases compiled *id.* and Simes and Taylor, Model Title Standards (1960), Standard 3.2(3).[2]

In the case at bar, there is no recorded instrument evidencing appellee's easement in appellant's chain of title. Applying the foregoing principles, the trial court correctly ruled that appellant did not have constructive notice of a possible easement and properly quieted title in favor of appellant.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., concurs separately.

LOCHER, J., concurs in judgment only.

HOLMES, J., concurring. Although I reach the same conclusion as does the majority herein, I do so by following a different route. The majority holds that the provisions of the Ohio Marketable Title Act are not applicable to the facts of this case, and that the common-law principles of notice under Ohio's recording statutes are all that need be considered. I believe this position to be misleading in that I feel it is necessary at the outset to refer to certain provisions of the Ohio Marketable Title Act.

R.C. 5301.48 states in pertinent part:

"Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest as defined in section 5301.47 of the Revised Code, subject to the matters stated in section 5301.49 of the Revised Code."

In recognizing interests which could encumber the land owned by one who has a marketable title, R.C. 5301.49 states in part:

---

[2] In Model Title Standards in comment (3) to Standard 3.2, Simes and Taylor offer the following illustration:

"In 1955, A, owning tracts X and Y, conveys tract Y to B in fee simple, granting to B also in the same deed the right to overflow tract X in the use of tract Y. B at once records. In 1956, A conveys tract X to C in fee simple, without referring to or excepting the flowage rights which he has granted to B. C, who paid value and had no notice of B's flowage rights, at once records. The title examiner for C is under no duty to search for the deed to B, since it is not in the chain of title of tract X. C takes tract X free from the flowage rights." *Id.* at 18-19.

"Such record marketable title shall be subject to:

"* * *

"(D) *Any interest* arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or [*sic*] record is started * * *." (Emphasis added.)

While R.C. 5301.49(D) states "any interest," I believe the legislative intent behind the marketable title proviso is to protect a valid and enforceable interest recorded subsequent to the effective date of the root of title. The purpose of the act is to facilitate real estate transactions and improve the marketability of land titles. This interpretation furthers the purpose by protecting the bona fide landowner from unenforceable or fraudulent claims brought against his property.

The court of appeals based much of its ruling on *Heifner* v. *Bradford* (1983), 4 Ohio St. 3d 49, in which this court interpreted certain provisions of the Marketable Title Act and held that a marketable title was subject to an interest arising out of an independent chain of title. However, we are presented with a different situation in the case *sub judice.*

In *Heifner,* this court was confronted with independent claims of ownership to the oil and gas rights in one particular tract of land. The independent chains of title stemmed from, and only concerned, the parcel at issue. Here, there are two parcels of real estate involved with only a common grantor. The burden placed on title examiners by *Heifner* is not as great as tracking many parcels that have a common grantor which would be required if the literal ruling of *Heifner* is extended to control the present situation. I am unwilling to create such a burden by ruling that a particular parcel of real estate is subject to an interest arising out of an independent chain of title from any other tract of land.

While finding *Heifner* not applicable, I also recognize that the Marketable Title Act does not, in and of itself, address the wide range of issues concerning enforceable real property interests. Thus, marketable title acts are intended to operate in conjunction with, rather than as a substitute for, the recording statutes. See Barnett, Marketable Title Acts — Panacea or Pandemonium? (1967), 53 Cornell L. Rev. 45, 52. Therefore, in order to determine whether appellee possesses an enforceable easement against appellant's property, we must, as did the majority here, turn to this state's recording statute and cases decided thereunder.

Applying the appropriate recording statutes and the case law thereunder, it may be reasonably concluded that in order for a purchaser of real property to be charged with constructive notice of an encumbrance contained in a prior recorded instrument, the prior instrument must be recorded in the purchaser's chain of title. In the case at bar there is no recorded instrument evidencing appellee's easement in appellant's chain of title. Therefore, the trial court correctly ruled that the appellant did not have constructive notice of the easement and properly quieted title in favor of the appellant.

Accordingly, I concur.