{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, in which the trial court granted summary judgment to appellee, U.S. Bank, and dismissed a motion for summary judgment filed by appellant, Margaret Deedman, in her capacity as Trustee of the Margaret E. Deedman Declaration of Trust. On appeal, appellant sets forth the following three assignments of error: *Page 2 
 {¶ 2} "1. The trial court erred in finding that U.S. Bank offered testimony `. . . that a chain of title search was performed by finding the recorded deed from the Sheriffs sale to Westhaven, and then tracing the grantors and grantees back at least 42 years', when in fact no such testimony was offered, but instead U.S. Bank's evidence was that its search only looked `. . . at the date a grantor, such as Westhaven Group, LLC, obtained a recorded interest in the property to the current date to determine if the grantor such as Westhaven Group, LLC conveyed an interest in the property to any party.'
 {¶ 3} "2. The trial court erred in finding that `. . . [t]he record contains no other circumstances or evidence that could have sparked an added inquiry by New Century mortgage (U.S. Bank's predecessor in interest) relative to the property's chain of title or lead to U.S. Bank's constructive notice of the Deedman mortgage . . .' when in fact there were three separate items with [sic] should have `sparked an added inquiry' as follows:
 {¶ 4} "a. The date of the deed dictated inquiry back to that date;
 {¶ 5} "b. A Sheriffs deed dictated inquiry back to the date of sale, or at least the date of confirmation; and
 {¶ 6} "c. The Doctrine of Estoppel.
 {¶ 7} "3. The trial court erred in failing to find that Westhaven, prior to conveying the property to Kennedy, had already granted a mortgage on the property, with mortgage covenants, to Deedman, and therefore, could not convey to Kennedy any greater title that it then held." *Page 3 
 {¶ 8} The undisputed, relevant facts are as follows. On April 6, 1999, Westhaven Group, LLC ("Westhaven"), purchased property located at 723 Lodge Street in Toledo, Ohio, at a sheriffs sale. The Lucas County Sheriff delivered the deed for the property to Westhaven on May 3, 1999. On May 25, 1999, Westhaven granted a mortgage in the amount of $50,000 to its subsidiary, Haven Holdings, LLC ("Haven"), secured by the property. That mortgage was recorded on June 4, 1999. Three weeks later, on June 25, 1999, the deed from the Lucas County Sheriff to Westhaven was recorded.
 {¶ 9} On August 12, 1999, Haven assigned its $50,000 mortgage to Tom and Margaret Deedman. That assignment was recorded on August 19, 1999. On February 15, 2001, Westhaven entered into a land contract for the sale of the property to Linda Kennedy. On April 25, 2002, Kennedy gave a mortgage on the property to New Century Mortgage Corporation ("New Century"), to secure a loan in the amount of $67,200. Kennedy used the proceeds of that loan to pay off the Westhaven land contract. The deed transferring the property from Westhaven to Kennedy, and the secured mortgage Kennedy granted to New Century, were both recorded on April 30, 2002. On May 23, 2003, Margaret Deedman assigned the deed to a trust established in her name.[1] The New Century mortgage was assigned to appellee, U.S. Bank on October 24, 2003.
 {¶ 10} On October 27, 1993, U.S. Bank filed a complaint in foreclosure against Kennedy. The case was twice stayed pending bankruptcy proceedings. However, on *Page 4 
November 23, 2005, U.S. Bank obtained relief from the second stay, and the case was reactivated. On January 26, 2006, Deedman filed a motion to intervene, on the basis that it held an interest in the property by virtue of the Haven to Deedman mortgage. On March 3, 2006, the trial court granted the application to intervene. Thereafter, Deedman and U.S. Bank each filed motions for summary judgment.
 {¶ 11} In its motion for summary judgment, filed on October 16, 2006, Deedman asserted that its interest takes priority over that of U.S. Bank, because the Haven to Deedman mortgage was recorded first in time. In support, Deedman argues that: (1) U.S. Bank does not have priority because it could only acquire that interest which Westhaven had the right to give; and (2) the recording of the Haven to Deedman mortgage gave constructive notice to all subsequent parties, including U.S. Bank, that Deedman had a prior interest in the property. Attached to Deedman's motion was the affidavit of attorney and title examiner, Kenneth I. White.
 {¶ 12} White stated in his affidavit that a search of records, such as the one performed in this case, is distinguishable from a proper title examination, which "involves thorough and detailed interpretation, [and an] analysis and evaluation of such documents and proceedings * * *." White further stated that any mortgage given by a purchaser who has purchased at a foreclosure sale, which is recorded prior to the recordation of the Sheriffs deed to that purchaser, "should be disclosed as an exception in a title examination." *Page 5 
 {¶ 13} In its motion for summary judgment, filed on October 23, 2006, U.S. Bank asserted that it has a priority interest in the property, since it was a bona fide purchaser for value which had no notice of the Haven to Deedman mortgage. In support, U.S. Bank argued that a title search performed on behalf of its predecessor in interest, New Century, failed to reveal the existence of the Westhaven to Haven mortgage, in spite of diligent efforts on behalf of the title examiner, because that mortgage was recorded prior to the recording of the sheriffs deed evidencing Westhaven's acquisition of the property. U.S. Bank further argued that, consequently, both the Westhaven to Haven and the Haven to Deedman transactions were outside the chain of title for the property, thereby defeating Deedman's claim that the Haven to Deedman mortgage has priority over U.S. Bank's interest.
 {¶ 14} Attached to U.S. Bank's motion were affidavits executed by April D. Percy, the assistant manager and title agent for Barrister's Title Agency, and John Ulmer, Manager of Westhaven. Also attached were copies of the Westhaven to Haven mortgage, recorded on June 4, 1999; the sheriffs deed recorded on June 21, 1999; an "Assignment of Mortgage" to Deedman which was recorded on August 19, 1999; the land contract executed by Westhaven and Kennedy; the Westhaven to Kennedy deed and the Kennedy to New Century mortgage, both of which were recorded on April 30, 2002; and the "Assignment of Mortgage" executed by New Century and U.S. Bank on October 24, 2003. *Page 6 
 {¶ 15} Percy stated in her affidavit that: (1) Barrister's was hired by New Century to do a title search on the property; (2) a chain of title search was performed "using the Lucas County, Ohio standards for title examinations"; (3) in performing the title search, the chain of title was traced through the grantee/grantor index from the date the sheriffs deed was recorded back 42 years, and forward to the date of closing to determining whether "the grantor, such as Westhaven Group, LLC, conveyed an interest in the Property to any party." In addition, Percy stated that Barrister's did eventually locate the missing transactions by searching the Lucas County, Ohio Recorder's Official Records; however, the original title search failed to reveal the Westhaven to Haven transaction because it was recorded "before Westhaven ever acquired an interest in the property." Percy concluded that, "[w]ithout receiving reference to the Westhaven Mortgage from counsel for the Deedman Trust in this litigation, Barrister's would have never discovered the Westhaven Mortgage and the assignment of the same to both Haven and Deedman Trust in the Lucas County, Ohio Recorder's Official Records because that chain of title began before Westhaven held an interest in the Property per the Lucas County, Ohio Recorder's Official Records."
 {¶ 16} In an "Affidavit as to Liens and Encumbrances" executed on April 25, 2000, Ulmer stated that the property was not encumbered by mechanics' liens or bankruptcy proceedings. In addition, Ulmer stated that there were "no outstanding deed of trust, mortgages" or other encumbrances on the property except as disclosed in an *Page 7 
attached schedule, which listed only the land contract between Westhaven and Kennedy, and taxes for the first half of 2001.
 {¶ 17} On April 19, 2007, the trial court issued an opinion and judgment entry, in which it found that the Haven to Deedman mortgage was valid as between those two parties. However, the trial court further found that the record of an instrument does not afford constructive notice to a subsequent bona fide purchaser for value "if it is outside the chain under which a purchaser or incumbrancer claims title or lien." Accordingly, the trial court concluded that U.S. Bank has the superior interest in this case, since the Haven to Deedman mortgage was "not recorded in a manner that would lead a title searcher conducting a link-by-link search to necessarily pass over it as required for statutory constructive notice."
 {¶ 18} The trial court also noted that Ulmer represented to U.S. Bank's predecessor that there were no encumbrances on the property, and no other circumstances or evidence existed that would have "sparked an added inquiry" or otherwise provided constructive notice of any such encumbrances. Ultimately, the trial court found that U.S. Bank was entitled to summary judgment as a matter of law, and dismissed Deedman's competing motion for summary judgment. A timely notice of appeal was filed by Deedman on May 16, 2007.
 {¶ 19} On appeal, Deedman asserts that the trial court erred by finding that U.S. Bank was a bona fide purchaser for value without notice and, as such, has an interest in the property that is superior to Deedman's interest. Specifically, Deedman argues in its *Page 8 
first assignment of error that the trial court erroneously determined that a proper title search would not reveal either the Westhaven to Haven or the Haven to Deedman transactions, because they were outside the chain of title for the property. In the second assignment of error, Deedman argues that the trial court was incorrect in stating that the record does not contain anything that should have "sparked added inquiry" as to the chain of title. In the third assignment of error, Deedman argues that Westhaven's ability to convey an interest in the property to Kennedy was limited to the extent that a mortgage had already been conveyed to Haven and, later, to Deedman. Since these three assignments of error are related, we will discuss them together.
 {¶ 20} We note at the outset that an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129; Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Ultimately, summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 21} Under Ohio law:
 {¶ 22} "The doctrine of estoppel by deed provides that where a grantor of real estate who has a defective title, or no title, conveys with a covenant of warranty, or its equivalent, and subsequently acquires the title, then such after-acquired title will inure to the benefit of the grantee by estoppel. This doctrine is equally applicable to a mortgagor *Page 9 
who obtains title subsequent to the granting of the mortgage." Gatts v.E.G.T.G., GMBH (1983), 14 Ohio App.3d 243, at paragraph one of the syllabus. See, also, Philly v. Sanders, 11 Ohio St. 490. ("[A] grantor with warranty is estopped by his grant from setting up against his grantee, any after acquired title to the lands granted or conveyed, by the language of his prior deed * * *." Id., at 494-495.)
 {¶ 23} It is undisputed that the sheriffs deed conveying the property to Westhaven was properly recorded on June 25, 1999. Accordingly, we agree with the trial court that, as a matter of law, the Westhaven to Haven and Haven to Deedman transactions became enforceable upon the recording of the sheriffs deed, as between those parties. The issue that remains, therefore, is whether U.S. Bank had knowledge of those recorded instruments which prevents it from enjoying the status of a bona find purchaser for value.
 {¶ 24} Pursuant to R.C. 5301.25(A): "All deeds * * * and instruments of writing properly executed for the conveyance or encumbrance of lands, * * * shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed * * * or instrument." See, also,Harris v. Paul (1930), 37 Ohio App. 206, 209; Sternberger v.Ragland (1897), 57 Ohio St. 148, 157. (It is well-established in Ohio that an unrecorded, or improperly recorded, deed is deemed fraudulent as against subsequent bona fide purchasers.) More recently, the Supreme Court of Ohio has held that "[pursuant to [R.C. 5301.25(A)], a bona fide purchaser for value is bound by an *Page 10 
encumbrance upon land only if he has constructive or actual knowledge of the encumbrance." Tiller v. Hinton (1985), 19 Ohio St.3d 66, 68.
 {¶ 25} In the proceedings below, the trial court did not find that the Westhaven to Haven and Haven to Deedman mortgages were defectively executed. However, the trial court concluded that, because the Westhaven to Haven transaction was recorded before the sheriffs deed, both it and the Haven to Deedman mortgage were outside Kennedy's chain of title. Therefore, they did not constitute constructive notice to U.S. Bank's predecessor of any competing interests in the property.
 {¶ 26} In support of its decision, the trial court cited Thames v.Asia's Janitorial Svc, Inc. (1992), 81 Ohio App.3d 579, in which this court previously held that "[a] subsequent purchaser of land is charged with constructive knowledge of the contents of an instrument recorded under R.C. 5301.25(A) `* * * only as, in the process of tracing, link by link, his chain of title on the record, necessarily pass under his inspection.'" Id., at 588, quoting Blake v. Graham (1856),6 Ohio St. 580, 584. (Emphasis original.) The trial court also relied on SpringLakes, Ltd. v. O.F.M. Co. (1984), 12 Ohio St.3d 333, in which the Ohio Supreme Court held that "in order for a purchaser of real property to be charged with constructive notice of an encumbrance contained in a prior recorded instrument, the prior instrument must be recorded in the purchaser's chain of title." Id., at 540, citing Sternberger, supra. While the trial court correctly stated the law set forth inThames and Spring Lake in its opinion, we disagree with their application to the facts of this case, for the following reasons. *Page 11 
 {¶ 27} First, the issue presented to this court in Thames was whether a land contract, although unrecorded and improperly executed, nevertheless gave constructive notice to a subsequent purchaser for value because it was referenced in a deed that appeared in the grantor's chain of title. In analyzing this issue, we stated that "proper recording of those instruments referenced in R.C. 5301.25(A) serves as `constructive' notice of that interest or encumbrance to all who claim through or under the grantor by whom such deed was executed. Such notice, in this statutory sense, is `constructive' because the subsequent purchaser is deemed to have notice of the record whether he reviewed it or not." Id. at 587. (Emphasis original.) Ultimately, we determined that: "while it is undisputed that the August 17, 1971 deed referencing the land contract to Booker and Velma was recorded in appellees' chain of title, the land contract to which it referred was defectively executed and, therefore, the reference in the deed to the land contract does not constitute constructive notice to appellees of the existence of the land contract * * *." Id., at 589.
 {¶ 28} Second, the rule relied upon by the trial court, as stated inThames, was originally derived from Blake v. Graham (1856),6 Ohio St. 580. That case involved a dispute over the priority of two competing interests in the same land, which were acquired from two different grantors. Specifically, the plaintiff acquired his title through the executors of the grantor's estate, and while the defendant's interest was acquired directly from the grantor's heirs. The Ohio property at issue was not mentioned in the grantor's will, which was probated in Pennsylvania. Ultimately, the court determined that *Page 12 
a purchase directly from the grantor's heirs had priority over a purchase from the executors, where such purchase was not authorized by the grantor's will, and could not easily be found in a title search. Id., at 583.
 {¶ 29} Third, in Spring Lake, supra, the issue presented was whether a purchaser's property was subject to an easement that was recorded in the chain of title to an adjoining property. The Ohio Supreme Court explained the rationale of the rule, which was originally established inSternberger, supra, as follows: "`A purchaser of other land from the same grantor is not charged with notice of building restrictions contained in an earlier deed not in his chain of title.`" Id., at 540, quoting Glorieux v. Lighthipe (1915), 88 N.J. Law 199. "`[I]t would impose an intolerable burden to compel [the purchaser] to examine all conveyances made by every one in his chain of title.'" Id. (Other citations omitted.) The Ohio Supreme Court ultimately found that the purchaser did not have constructive notice and, therefore, took the property free of the easement.
 {¶ 30} In contrast to Thames, Blake, and Spring Lake, in this case, both Deedman and U.S. Bank claim an interest arising from a common grantor, Westhaven. Accordingly, the trial court's reliance on those cases is misplaced.
 {¶ 31} In addition to the foregoing, although the scenario presented in this case is not commonly found in Ohio case law, it is analogous to the one presented in Eversole v. Virginia Iron, Coal Coke Co., 29 Ky.L.Rptr. 151. In Eversole, Thomas Milan purchased land from his grantor, William Stacy, but did not receive a deed. Milam then granted mineral rights in the property to another party, Trigg, who recorded his interest *Page 13 
before assigning the mineral rights to Virginia Iron, Coal Coke Co. ("Virginia Iron"). Later, Milam sold the land to James Eversole, who acquired a deed from Stacy, which was recorded. James Eversole then sold the land to his son, M.C. Eversole. M.C. Eversole's deed, which was also recorded, purported to convey all the interests in the land, including the mineral rights. At that point, Virginia Iron brought an action to quiet title to the mineral rights.
 {¶ 32} In determining whether M.C. Eversole was a bona fide purchaser for value, the Kentucky appellate court first distinguished the case before it from all other "notice" cases, in which competing interests in land were not given through the same grantor. Id.[2] The court then determined that the facts presented in Eversole were "sufficient to put [M.C] Eversole upon notice that in investigating the title he must look to any conveyance that may have been made by Milam." The Kentucky court reasoned that, "`[generally, whenever the proposed purchaser learns anything which renders the vendor's title suspicious, he is thereby put on inquiry, and must pursue this inquiry at his peril until he finds the unrecorded grant or incumbrance, or until he has exhausted all means of finding it.'" Id., quoting Dembitz on Land Titles. Ultimately, the court found that "[t]he deed from Milam to Trigg had been recorded in the manner provided by the statute, and [M.C] *Page 14 
Eversole was bound to take notice of it, and he cannot escape the responsibility for his failure to find it by sheltering himself under the technical rule that it was outside the regular chain of title that he was investigating." Id.
 {¶ 33} In this case, the trial court found, based on U.S. Bank's assertion that a proper title search was performed, and Ulmer's dubious representation that there were no outstanding encumbrances on the property, that the record contained no facts sufficient to "spark an inquiry" as to any competing interest in the property. However, this analysis ignores the undisputed fact that U.S. Bank and Deedman have a common grantor, as set forth above. It also does not consider the impact of the particular transaction through which Westhaven originally acquired title to the property, i.e., through a sheriffs sale.
 {¶ 34} Whenever property is sold at a sheriffs sale, "[a]ll the estate and interest of the person whose property the officer so professed to sell and convey, whether it existed at the time the property became liable to satisfy the judgment, or was acquired afterward, shall be vested in the purchaser by the sale." (Emphasis added.) R.C. 2329.37;Jashenosky v. Volrath (1899), 59 Ohio St. 540, 545. The Supreme Court of Ohio has long held that a "deed executed pursuant to the order of confirmation, by relation, takes effect as of the day of sale." See, also, Oviatt v. Brown (1846), 14 Ohio 285.[3] *Page 15 
 {¶ 35} It is undisputed that U.S. Bank was aware of the date the sheriffs deed was recorded. The deed stated that the Lucas County Sheriff sold the property to Westhaven on April 6, 1999, which predated the recording of the Westhaven to Haven mortgage. Thus, U.S. Bank had in its possession sufficient evidence to at least "spark an inquiry" as to what, if any, conveyances were made by Westhaven between April 6 and June 25, 1999. Having admittedly failed to make such an investigation, U.S. Bank cannot escape responsibility by claiming that the Deedman mortgage was technically outside the regular chain of title for the property. See Eversole, supra.
 {¶ 36} This court has reviewed the entire record that was before the trial court and, upon consideration thereof, finds that the trial court erred when it found that: (1) the recording of the Deedman mortgage before the sheriffs mortgage did not constitute constructive notice pursuant to 5301.25(A); and (2) U.S. Bank, as a bona fide purchaser for value, had an interest in the property that is superior to Deedman. We further find that there remains no other genuine issue of material fact and, after considering the evidence presented most strongly in favor of U.S. Bank, Deedman is entitled to summary judgment as a matter of law. Appellant's three assignments of error are well-taken.
 {¶ 37} The judgment of the Lucas County Court of Common Pleas is hereby reversed, and the case is remanded to the trial court for further proceedings consistent with this decision and judgment entry. Appellee is ordered to pay the costs of this appeal *Page 16 
pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J. Concur.
[1] In the interest of clarity, throughout the remainder of this Decision and Judgment Entry, both Margaret Deedman the individual and the Margaret E. Deedman Declaration of Trust will be referred to as "Deedman."
[2] One of those cases was Executors of George Leiby v. Wolf,10 Ohio 83, in which the Ohio Supreme Court held that it was unreasonable to impute knowledge of an encumbrance on a parcel of land to a title searcher where "there is nothing to connect the name or the interests of the [person asserting the encumbrance] with any part of it * * *." Id., at 84. For reasons expressed herein, we also find that Wolf is factually distinguishable from this case.
[3] The rationale for this rule of equity, as expressed inOviatt, supra, is that: "the purchaser of land at a judicial sale "purchases at his peril; and the purchase money goes to the creditor — not to the owner of the land; and, if the title fails, he loses the consideration. He has no recourse. [In contrast, the] purchaser at private sale may arrest the proceedings at any stage if cause exists, and look to his vendor for redress. If his title fails, he may sue and recover back the consideration paid." *Page 1