[Cite as *Huntington Natl. Bank v. R Kids Count Learning Ctr., L.L.C.*, 2017-Ohio-7837.]

IN THE COURT OF APPEALS OF OHIO

TENET APPELLATE DISTRICT

| | | |
|---|---|---|
| The Huntington National Bank, | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | : | |
| v. | : | No. 16AP-688 |
| | : | (C.P.C. No. 14CV-5042) |
| R Kids Count Learning Center, LLC et al., | | |
| | : | (REGULAR CALENDAR) |
| Defendants-Appellees, | | |
| | : | |
| The Sehgal Family Limited<br>Partnership, | : | |
| | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on September 26, 2017

**On brief:** *Plunkett Cooney*, and *Amelia A. Bower*, for The Huntington National Bank. **Argued:** *Amelia A. Bower*.

**On brief:** *Butler, Cincione & DiCuccio*, and *N. Gerald DiCuccio*, for Scioto Valley Mortgage Company.

**On brief:** *James A. Zitesman*; *Giorgianni Law LLC*, and *Paul Giorgianni*, for The Sehgal Family Limited Partnership. **Argued:** *Paul Giorgianni*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} In this appeal and cross-appeal from a decree of foreclosure entered by the Franklin County Court of Common Pleas, the parties continue their dispute over the enforceability of a leasehold mortgage. Although multiple parties participated (or declined to participate, resulting in default judgments) in proceedings in the trial court,

the active parties on appeal are defendant-appellant, The Sehgal Family Limited Partnership ("Sehgal Family"), holder of the fee interest in the subject property, and plaintiff-cross-appellant, Huntington National Bank, holder of a note secured by a mortgage upon a leasehold interest.

## I. Facts and Procedural History

{¶ 2} The facts of this case, while largely undisputed, require recitation in some detail and will be developed chronologically. In 1977, MedVest Investments ("MedVest") acquired fee-simple title to a 1.5-acre parcel located at 6725 Karl Road in Franklin County, Ohio. In 1978, MedVest then leased .6 acres (the "subject property") out of the 1.5 acre parcel to a related entity, ScioVest Ltd. ("ScioVest"), which planned to construct a daycare center on the premises. This 99-year renewable lease (the "ground lease") at $100 per year was not an arms-length transaction. The terms of the ground lease further provided that ScioVest could not sublet the subject property without the fee owner/lessor's permission, and that all permanent improvements, including structures and fixtures, would become the property of the lessor at the termination of the lease. ScioVest then duly improved the subject property with a building and fixtures and operated a daycare center on the premises.

{¶ 3} In 2007, ScioVest executed an assignment of its leasehold to defendant-appellee R Kids Count Learning Center, LLC ("R Kids") for the price of $311,000. MedVest, still fee owner of the subject property, consented to the assignment and entered into a lease modification with its new tenant, R Kids, that shortened the initial lease term so that it ended in 2032, renewable for 50-year terms. To finance its acquisition of the leasehold interest, R Kids borrowed $286,400 from Huntington secured by a note and mortgage on the leasehold interest in favor of Huntington. The mortgage was duly recorded in Franklin County, although the trial court in this case would ultimately find that the recordation fell outside the chain of title for the fee interest in the 1.5 acre parcel, being recorded only under the name of the lessee. In conjunction with the lease assignment, MedVest, as lessor, entered into a "subordination, consent, and non-disturbance agreement" in favor of Huntington that subordinated MedVest's rights as fee owner and lessor. Huntington chose not to record this instrument.

{¶ 4} MedVest thereafter transferred its fee-simple title in the entire 1.5 acre parcel to Karl Road Medical Property, LLC ("Karl Road Medical") by general warranty deed in 2008, subject to the leasehold held by R Kids. In 2009, the fee interest in the 1.5

acre parcel again changed hands when Karl Road Medical conveyed its interest to Sehgal Family.

{¶ 5} Five years after acquiring the leasehold from ScioVest, R Kids decided to sublet the daycare building. On November 19, 2013, the principals of R Kids purported to execute a sublease of the subject property to another daycare operator, Just Like Grandma's Learning Center, LLC, which took over exclusive possession of the daycare building. R Kids did not seek Sehgal Family's prior consent for the sublease, although R Kids would later demand a retroactive acquiescence when business relations soured between R Kids, Sehgal Family, and Huntington.

{¶ 6} R Kids defaulted on its note payments to Huntington, and, on February 27, 2014, Huntington took a cognovit judgment against R Kids for the unpaid balance. Huntington filed its initial complaint in foreclosure on May 9, 2014, followed by a first amended complaint filed July 24, 2014, and a second amended complaint filed October 14, 2014. In the interim, in June 2014, Sehgal Family sent R Kids a notice of default and termination of ground lease, based in part on R Kids' attempt to sublease the daycare property without consent.

{¶ 7} Sehgal Family's answer to the second amended complaint included a counterclaim against Huntington seeking declaratory judgment to establish that the ground lease had terminated and Huntington had no further rights against the subject property. Sehgal Family brought a cross-claim against R Kids for breach of the ground lease for improper sublet, failure to pay property taxes, and violations of health and fire codes. Sehgal Family also brought a cross-claim against Karl Road Medical for breach of the warranty deed by which Karl Road Medical had conveyed the 1.5 acre parcel to Sehgal Family.

{¶ 8} Various parties failed to appear or answer in the case, most significantly R Kids. On December 16, 2014, Sehgal Family moved for summary judgment on its counterclaim against Huntington. On May 12, 2015, Huntington moved for default judgment or summary judgment, as appropriate, against all defendants. On June 19, 2015, Sehgal Family moved for default judgment against R Kids on its cross-claim. Huntington attempted to oppose default judgment in favor of Sehgal Family on this claim by filing a memorandum in opposition based on Huntington's rights as mortgagee with an interest in R Kids' leasehold. Huntington also proposed to "cure" R Kids' default by paying the nominal rent owed and requesting that Sehgal Family furnish information

regarding any unpaid taxes that were the responsibility of R Kids under the ground lease. In connection with Sehgal Family's prior refusal to accept the proffered rent or furnish tax information, Huntington filed motions to interplead corresponding funds with the court on January 14, 2015, and March 30, 2016, both of which the trial court granted.

{¶ 9} The trial court addressed the competing motions for summary judgment through a series of interlocutory decisions rendered on April 29, and June 19, 2015, May 12, August 15, and a final entry on September 28, 2016. For purposes of this appeal, the essential aspects of the trial court's final judgment consist of a finding that Sehgal Family properly terminated the lease due to breach by R Kids, but that Huntington's mortgage interest in the leasehold survived termination of the lease by application of Ohio's lis pendens statute. The court further found that the subordination agreement executed in favor of Huntington by prior fee-simple owner MedVest was unenforceable against subsequent fee holders because it was never recorded. The court also expressly ruled that Huntington's mortgage was recorded outside the chain of title of the 1.5 acre parcel at the time Sehgal Family purchased its fee interest, but that Sehgal Family was nonetheless charged with constructive knowledge of Huntington's mortgage interest in the lease because Sehgal Family had actual knowledge of the underlying lease itself (and R Kids' presence on the property) at the time of the purchase.

{¶ 10} Based on these findings, the trial court ordered that judicial sale of the lease interest could proceed to allow Huntington to collect on its collateral:

> It is further ORDERED, ADJUDGED AND DECREED that the Ground Lease attached hereto as Exhibit "B" is terminated as between Defendant Sehgal Family Limited Partnership and Defendant R Kids. However, notwithstanding the Court's termination of the Ground Lease attached hereto as Exhibit "B" as between Defendant Sehgal Family Limited Partnership and Defendant R Kids, the Ground Lease attached hereto as Exhibit "B" is not terminated as between Plaintiff Huntington and Defendant Sehgal Family Limited Partnership. Any interest in the leasehold estate acquired by Defendant Sehgal Family Limited Partnership is subject to Plaintiff Huntington's mortgage.
>
> The Court, therefore, ORDERS ADJUDICATES AND DECREES that Plaintiff Huntington has a right to cure any alleged default by Defendant R Kids under the Ground Lease attached hereto as Exhibit "B" pursuant to the Mortgage and preserves Plaintiff Huntington's right to foreclose the

> leasehold estate with the purchaser at sheriff's sale acquiring the rights of Huntington under the Mortgage and under the Ground Lease attached hereto as Exhibit "B" as against Defendant Sehgal Family Limited Partnership.

(Emphasis sic.)  (Sept. 28, 2016 Decision at 6.)

## II.  Assignments of Error

{¶ 11} Sehgal Family and Huntington have each appealed from the trial court's final judgment.  Huntington attacks the trial court's determination that the lease was terminated by Sehgal Family based on a default judgment. Huntington also submits the complementary argument that if the default judgment is vacated, the facts do not support any actual breach of the lease by R Kids. Sehgal Family asserts that the trial court correctly determined the lease was properly terminated in June 2015, but erred in holding that Huntington's mortgage interest survived that termination.  Defendant-appellee Scioto Valley Mortgage Company has filed an appellee's brief for the sole purpose of restating its position that although it was named as a defendant by Huntington and duly filed an answer, it claims no competing interest in the subject property and denies any obligation owed toward the other parties.

{¶ 12} Sehgal Family specifically assigns the following seven assignments of error for our review:

> [I.] The trial court overruled Sehgal's motion for summary judgment.
>
> [II.] The trial court granted [Huntington's] motion for summary judgment.
>
> [III.] The trial court overruled Sehgal's motion for reconsideration.
>
> [IV.] The trial court dismissed Sehgal's counterclaim for declaratory judgment against [Huntington].
>
> [V.] With respect to [Huntington's] claims against R. Kids, the trial court granted [Huntington] a remedy that improperly infringes upon Sehgal's property rights.

*Conditional Assignments of Error*

> [VI.] The trial court dismissed Sehgal's claim against Karl Road Medical Property LLC.

[VII.] The trial court granted [Huntington's] "motion to interplead."

Huntington assigns the following single cross-assignment of error for our review:

THE TRIAL COURT ERRED IN GRANTING APPELLANT SEHGAL'S MOTION FOR DEFAULT JUDGMENT AGAINST R KIDS, TERMINATING THE GROUND LEASE AFTER GRANTING HUNTINGTON'S MOTIONS FOR SUMMARY JUDGMENT PERMITTING THE FORE-CLOSURE AND SALE OF HUNTINGTON'S LEASEHOLD MORTGAGE.

## III. Discussion

### A. Huntington's Cross-Assignment of Error

{¶ 13} We first address Huntington's sole cross-assignment of error on appeal, which asserts the trial court erred in finding that Sehgal Family could terminate the ground lease based on a default judgment against R Kids on this issue. Huntington also asserts that the doctrine of lis pendens precluded default judgment and termination of the lease. Although the trial court did examine the circumstances of the alleged breach of the ground lease by the tenant, the trial court's judgment in this respect is essentially based on a finding of default judgment due to R Kids' failure to answer the cross-claim by Sehgal Family. Because we conclude that default judgment in favor of Sehgal Family on the cross-claim against R Kids was appropriate, and termination of the lease on this basis was proper, we do not reach any of the factual circumstances surrounding R Kids' alleged breach of the ground lease terms.

{¶ 14} Civ.R. 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend * * * the party entitled to a judgment by default shall apply in writing or orally to the court therefor." An appellate court reviews the trial court's decision to grant or deny a motion for default judgment under an abuse-of-discretion standard. *Lopez v. Quezada*, 10th Dist. No. 13AP-389, 2014-Ohio-367, ¶ 11. Default judgment is appropriate against a defendant who fails to respond, because liability is admitted or confessed by the failure to answer and consequent absence of statements refuting the plaintiff's claims. *Id.* at ¶ 12, citing *Ohio Valley Radiology Assocs., Inc. v. Ohio Valley Hosps. Assn.,* 28 Ohio St.3d 118, 121 (1986). "Consequently, when a defendant fails to contest the factual allegations raised in the

complaint, default judgment is appropriate because the defendant has admitted to the facts that establish the plaintiff's claims." *Id.*

{¶ 15} On appeal, however, we must ascertain whether the plaintiff pleaded sufficient facts to support the claim, and otherwise pleaded a claim for which relief may be granted. *Id.* at ¶ 13, citing *Whiteside v. Williams*, 12th Dist. No. 2006-06-021, 2007-Ohio-1100, ¶ 12; *Girard v. Leatherworks Partnership*, 11th Dist. No. 2004-T-0010, 2005-Ohio-4779, ¶ 38; *Ford v. Estate of Tonti*, 10th Dist. No. 94APE10-1488 (June 15, 1995). As part of our review of the trial court's exercise of discretion in granting default judgment, therefore, we must examine the complaint to see whether it can "withstand a Civ.R. 12(B)(6) motion for failure to state a claim." *Quezada* at ¶ 17. "[W]hen a plaintiff fails to state a claim, a court cannot grant default judgment with regard to that alleged claim." *Id.*

{¶ 16} A review of the cross-claim filed by Sehgal Family establishes that it states a claim for breach and termination of the ground lease, alleging that R Kids' principals attempted to sublet the property without obtaining consent from the landlord, failed to pay property taxes, and failed to maintain the premises as required by the lease, and that these are default events under the express terms of the ground lease agreement. The complaint contains a copy of the lease as amended. While Huntington on appeal attempts to contest the facts underlying the default and, therefore, whether there was an actual breach by R Kids, the taking of evidence in a default judgment matter is discretionary with the court, and generally contemplated to allow a determination of the amount of damages. Civ.R. 55(A); *Quezada* at ¶ 12. Quantifiable money damages are not at issue here, since Sehgal Family sought only a bare declaration that the lease had been terminated in June 2014.

{¶ 17} Moreover, although Huntington did file memoranda in the trial court contesting the propriety of default judgment against R Kids, Huntington does not assert on appeal that it was thereby purporting to file an actual answer on R Kids' behalf, or even that the subordination agreement, being unfiled, gave Huntington any legal right to do so. Huntington has not established any authority to assert such a right to answer on behalf of R Kids. Huntington, therefore, cannot assert that its memorandum filed in opposition to default judgment against R Kids was effective to preclude default judgment in the trial court.

{¶ 18} Huntington also argues that the doctrine of lis pendens precluded default judgment on the cross-claim brought by the Sehgal Family against R Kids. Ohio's lis pendens statute provides as follows: "When a complaint is filed, the action is pending so as to charge a third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title." R.C. 2703.26. Here, paradoxically, while the trial court applied lis pendens to preserve Huntington's right to foreclose on the matter, the court declined to apply lis pendens to preclude termination of the lease itself. Our discussion of lis pendens, therefore, will address both applications of the doctrine by the trial court for later development and discussion in Sehgal Family's assignments of error.

{¶ 19} R.C. 2703.26 prevents a third person from "acquiring" rights that supersede or interfere with a litigant's rights, after that litigant has commenced the action. When properly applied, the "conveyed interest * * * becomes subject to the outcome of the pending litigation." *Cincinnati ex rel. Ritter v. Cincinnati Reds, LLC*, 150 Ohio App.3d 728, 2002-Ohio-7078, ¶ 31 (1st Dist.). However, the notice of lis pendens "does not of itself give the plaintiff rights in the property superior to those who acquire an interest in the property during the pendency of the suit. The final judgment rendered by the court ultimately determines the priority of rights in the property." *Levin v. George Fraam & Sons, Inc.*, 65 Ohio App.3d 841, 847 (9th Dist.1990). "The general intent and effect of the doctrine of lis pendens is to charge third persons with notice of the pendency of an action, and to make any interest acquired by such third persons subject to the outcome and judgment or decree of the pending lawsuit." *Bank of New York v. Barclay*, 10th Dist. No. 03AP-844, 2004-Ohio-1217, ¶ 10. The direct and most obvious intent of the rule is to prevent litigants from circumventing the rights of plaintiffs who have initiated litigation by transferring the subject property while an action is pending, thereby frustrating the eventual judgment of the court. *Stewart v. Railway Co.,* 53 Ohio St. 151, 164 (1895) (interpreting predecessor statute).

{¶ 20} The facts of the present case make clear that Sehgal Family did not "acquire rights during the pendency of the action." Sehgal Family acquired a fee-simple interest in the entire 1.5 acre parcel, including the .6 acres subject to the ground lease, in November 2009. Sehgal Family acquired the attendant bundle of contractual rights under the lease at that time. The exercise of Sehgal Family's contractual rights under the lease at a later date, based on the alleged default by tenant R Kids, does not represent an "acquisition" as

contemplated by the lis pendens statute. The trial court therefore did not err in concluding that lis pendens did not bar default judgment in favor of Sehgal Family against R Kids and termination of the ground lease.

{¶ 21} In short, we find that R.C. 2703.26 does not apply against a party that acquired its interest prior to commencement of the litigation. Sehgal Family's supposed "acquisition" consisted of the exercise of a pre-existing contractual right in the form of contractual lease rights that long pre-dated Huntington's foreclosure action. Lis pendens does not apply to subordinate that contractual right in favor of Huntington's eventual judgment in foreclosure.

{¶ 22} Based on the foregoing discussion, we determine the trial court did not err in its application of general principles of default judgment when addressing Sehgal Family's cross-claim against R Kids, and that lis pendens did not preclude a grant of default judgment. Huntington's sole cross-assignment of error is overruled.

**B. Sehgal Family's Assignments of Error**

{¶ 23} We now turn to Sehgal Family's assignments of error, the first five of which present intertwined issues and will be addressed together. Broadly put, the question is whether Sehgal Family had constructive notice of the leasehold mortgage and took its fee interest subject to Huntington's rights as mortgagee.

{¶ 24} This aspect of the case was decided by the trial court on cross-motions for summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the non-moving party has no evidence to prove its case. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates that the non-moving party has no evidence to support each element of the stated claims. *Id.*

{¶ 25} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994); *Bard v. Soc. Natl. Bank*, 10th Dist. No. 97APE11-1497 (Sept. 10, 1998). Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.*, 106 Ohio App.3d

440, 445 (5th Dist.1995). As such, we have the authority to overrule a trial court's judgment if the record does not support any grounds raised by the movant, even if the trial court failed to consider those grounds. *Bard.*

{¶ 26} Sehgal Family asks this court to review the propriety of the trial court's denial of summary judgment in favor of Sehgal Family. As a rule, denial of summary judgment is not a final appealable order. R.C. 2505.02; *State ex rel. Overmeyer v. Walinski*, 8 Ohio St.2d 23 (1966); *Ohio Civil Serv. Emps. Assn. v. Moritz*, 39 Ohio App.3d 132, 133 (10th Dist.1987). However, when the trial court has entered final judgment in the matter and the case is decided solely on questions of law and undisputed fact, we may consider whether it was error to deny summary judgment. *Holdren v. Garrett*, 10th Dist. No. 09AP-1153, 2011-Ohio-1095. When addressing such a denial, we consider the competing motions independently: "The assertion by each party that there are not factual issues is limited to the purposes of the moving party's motion, and such admissions by the movant may not be applied to the adversary's motion. The filing of cross-motions for summary judgment accordingly does not establish the absence of a material issue of fact." *S.E.A., Inc. v. Dunning-Lathrop & Assoc., Inc.*, 10th Dist. No. 00AP-165 (Dec. 21, 2000).

{¶ 27} As a general proposition, when a landlord terminates a lease due to the tenant's default, the leasehold mortgagee will see the mortgage rendered valueless with the extinction of the tenant's leasehold estate. This is because the mortgage given in a leasehold estate covers only such rights as are held by the lessee. *See generally Abraham v. Fioramonte*, 158 Ohio St. 213, 223 (1952); *Mic Bruce, Inc. v. N. Ohio Food Terminal*, 8th Dist. No. 38635 (Mar. 29, 1979). "If the lease is declared forfeited, then the leasehold mortgage ceases to exist." *Franklin Steel Co. v. 350 S. High, Ltd.*, 10th Dist. No. 87AP-391 (Mar. 29, 1988); s*ee also Culberson Transp. Serv., Inc. v. John Alden Life Ins. Co.*, 10th Dist. No. 96APE11-1501 (June 30, 1997) (leasehold interest was only security for leasehold mortgage and did not encumber fee-simple title to property).

{¶ 28} Applying this rule, we can see that in order to claim that its mortgage interest has priority over the right of reversion owned by Sehgal Family, pursuant to the ground lease, Huntington must establish that Sehgal Family had notice of the mortgage at the time it purchased the 1.5 acre parcel from Karl Road Medical.

{¶ 29} We first address and reject the trial court's conclusion that Sehgal Family had constructive notice of Huntington's mortgage. Because the primary purpose of the real property recording system is to establish clear rules regarding the rights of a good-

faith purchaser, R.C. 5301.25(A) establishes that an unrecorded mortgage is unenforceable against subsequent bona fide purchasers of the fee-simple interest in the property:

> All deeds, land contracts referred to in division (A)(21) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

R.C. 5301.25(A).  As a result, "R.C. 5301.25 provides that if a lienholder fails to record an encumbrance on real property, the lienholder will not have the benefit of being able to claim constructive notice of the lien against a subsequent purchaser."  *Daniely v. Accredited Home Lenders*, 8th Dist. No. 99208, 2013-Ohio-4373, ¶ 12.

{¶ 30} In the present case, Huntington recorded its mortgage outside the chain of title of the 1.5 acre parcel.[1]  The subordination agreement was not recorded at all.  Under the statute, constructive notice of the recorded encumbrance rises only when the instrument is recorded in the chain of title.  "[S]ince the encumbrance was never recited in any deed in the chain of title, the purchaser could not be charged with constructive notice."  *Emerick v. Multicon Builders, Inc.*, 57 Ohio St.3d 107, 109 (1991).  " 'A searcher can be fairly supposed to be made acquainted with the contents of such deeds only as, in the process of tracing, link by link, his chain of title on the record, necessarily pass under his inspection.' "  *Baker v. Koch*, 114 Ohio App. 519, 521-23 (10th Dist.1960), quoting *Blake v. Graham*, 6 Ohio St. 580, 584 (1856).  *See also Terra Vista Estates, Inc. v. Moriarty*, 8th Dist. No. 61033 (Oct. 15, 1992) (recordation of lien outside of chain of title did not provide constructive notice of lien).

---

[1] The R Kids ground lease appears in the chain of title for the 1.5 acre parcel because it was recorded under MedVest, a prior owner, as grantor of the lease. Huntington's mortgage, however, was recorded only under the name of the tenant lessee, R Kids, and was outside the chain of title of the 1.5 acre parcel. The warranty deed from MedVest to Karl Road Medical does not refer to Huntington's mortgage or the subordination agreement. The title and closing agent for this transaction would later submit an affidavit stating that the mortgage was not in the chain of title when a title search was performed in conformity with industry standards because the mortgage did not involve a title holder and was not a lien against the fee-simple title.

{¶ 31} In the present case, Huntington argues that Sehgal Family is charged with constructive notice because the chain of title did reflect a recorded lease of the partial property, and the lease and fee-simple interest in the 1.5 acre parcel can be traced back to a common grantor, MedVest. Huntington, therefore, argues that Sehgal Family was not only charged with constructive knowledge of recorded instruments directly within the chain of title, but obligated to follow-up the lease and discover subsequent recorded documents pertaining to the lease parties. The Supreme Court of Ohio, however, has rejected this common-grantor theory of constructive notice:

> "* * * [T]he only fair rule is to hold that the record of an instrument will not afford constructive notice, if it is outside the chain *under which a purchaser or incumbrancer claims title or lien*. To hold otherwise would be to impose upon such parties the duty of making a general search of every instrument filed for record, without affording facilities therefor. * * *"

(Emphasis added.) *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 337 (1984), quoting 1 Patton on Titles (2 Ed.1957) 231-32, Section 69. As such, the subsequent purchaser had no duty to check the records of property conveyed by its predecessor to determine if there were any title transactions within other chains of title other than its own parcel. *Id.* Because here the heart of the trial court's reasoning relies on imputed knowledge based on an obligation for the Sehgal Family to search outside the chain of title for its fee-simple purchase of 1.5 acres, the trial court erred in concluding that Sehgal Family had constructive notice.

{¶ 32} In the alternative, Huntington argues that Sehgal Family had, if not the constructive notice provided through the real estate recordation system, then actual knowledge that the leasehold was subject to a mortgage at the time of purchase. Huntington presented no evidence of this in opposition to summary judgment, beyond the bald assertion that Sehgal Family was aware of the lease and presence of R Kids on the property. In addition, Huntington presented no authority for the proposition that actual knowledge of a leasehold imputes actual knowledge that the leasehold is necessarily mortgaged.

{¶ 33} Finally, Huntington argues that equitable principles must prevent Sehgal Family from securing a windfall by merging the heretofore-unproductive leasehold with Sehgal Family's fee-simple ownership interest, thereby acquiring not only the underlying land but the post-1978 daycare structure as well, neither of which would be reflected in

the price paid by Sehgal Family in 2009. Huntington cites to this court's decision in *Franklin Steel*, in which we upheld the trial court's refusal to cancel a lease and thereby nullify a leasehold mortgage.

{¶ 34} Sehgal Family's fee-simple interest is encumbered neither by the unrecorded subordination agreement nor the mortgage recorded outside the chain of title. The mortgage interest was extinguished on termination of the lease.[2] Once the lease terminated, there remained no interest to which the mortgage held by Huntington could attach. With the leasehold terminated, no mortgage interest could support foreclosure, and no recovery on the now-extinguished lease could be had through sheriff's sale or otherwise. The trial court erred in finding that Huntington could pursue its collateral and recover its loan by executing on the leasehold interest; Sehgal Family was entitled to summary judgment on this issue. Sehgal Family's first through fifth assignments of error have merit and are sustained.

{¶ 35} Sehgal Family's sixth assignment of error asserts the trial court improperly dismissed Sehgal Family's cross-claim against Karl Road Medical, the entity from which the Sehgal Family purchased its fee interest. Because the trial court found this claim was rendered moot by its conclusions with regard to other aspects of the case, the trial court must reverse its judgment on this cross-claim, reinstate the cross-claim, and consider the same. Sehgal Family's sixth assignment of error has merit and is sustained.

{¶ 36} Sehgal Family's seventh assignment of error asserts the trial court erred in granting Huntington's motion to interplead funds. Without passing on the propriety of interpleader in the present case, the trial court will generally revisit its rulings regarding the respective obligations of the parties involving tax obligations under the lease, essentially rendering Sehgal Family's seventh assignment of error moot.

## IV. Conclusion

{¶ 37} For the foregoing reasons, Sehgal Family's first, second, third, fourth, fifth, and sixth assignments of error are sustained, Sehgal Family's seventh assignment of error is rendered moot, Huntington's cross-assignment of error is overruled, and it is the judgment and order of this court that the judgment of the Franklin County Court of

---

[2] Although Huntington's alleged equitable considerations can be disposed of in summary judgment, *17 Mile, L.L.C. v. Kruzel*, 8th Dist. No. 99358, 2013-Ohio-3005, the trial court never fully addressed Huntington's equitable arguments because the court chose to apply (wrongly) lis pendens in protection of Huntington's mortgage interest.

Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed*
*and cause remanded.*

KLATT and BRUNNER, JJ., concur.

KLATT, J., concurring.

{¶ 38} I agree with the majority decision. I write separately simply to note that, because we have held that the leasehold interest in this case was lawfully terminated, it is unnecessary to address the question of whether Huntington's mortgage interest has priority over the right of reversion owned by Sehgal Family under the ground lease. As suggested in the majority decision, Huntington's mortgage encumbers only the leasehold interest. Once the leasehold interest is lawfully terminated, the mortgage essentially encumbers nothing.

_____